COTTER, RESPONDENT, *v.* GRAND LODGE A. O. U. W. OF MONTANA, APPELLANT.

[No. 1157.]

[Submitted April 28, 1899.   Decided June 26, 1899.]

*Mutual Benefit Associations— Constitution and By-Laws— Contracts — Ousting Jurisdiction of Courts — Validity — Construction—Mandamus.*

1.   Civil Code 1895, Section 2245, making void provisions of contracts by which the jurisdiction of courts over controversies thereunder is ousted, does not apply to contracts made before its adoption.

2.   The common law doctrine, that a provision in an ordinary contract requiring all differences between the parties touching their rights and liabilities thereunder to be submitted to arbiters, whose decision shall be conclusive and final, will not be allowed to bar the litigation of such differences in the courts, is an anomaly, and inconsistent with the right freely to contract, and its operation should not be extended by construction, nor should it ever be invoked to nullify or impair contractual provisions not clearly infected with the supposed evils intended to be cured or prevented.

3.   *Semble:* Members of, and those claiming benefits from, mutual benefit societies are bound, in the absence of fraud or palpable error, to seek redress of their grievances in the mode prescribed by the society, wherein vests the sole jurisdiction to right their wrongs, and are precluded from resort to the courts.

4.   The laws of a voluntary mutual benefit society required a claimant, whenever any claim under a beneficiary certificate shall be rejected by its grand master and finance committee, before any other proceedings shall be had thereunder, to demand a hearing and offer to submit his claim to its board of arbitration, and if dissatisfied with the conclusions of said board, he must, by appeal, submit his claim to the grand lodge, and if dissatisfied with the action of the grand lodge, he must, by appeal, submit his claim to the supreme lodge, and without such submission and appeal said claimant shall be estopped by virtue thereof from maintaining any suit or action upon such claim.

*Held:*  That such provisions are valid and enforceable so far as they require, as a con-

dition precedent to the bringing of an action at law to recover a money judgment upon a death claim, an exhaustion of the prescribed remedies within the order.

5. The constitution and by-laws of a mutual benefit society are binding on the beneficiary of a deceased member.

6. The laws of a mutual benefit society provided, that when a death claim "shall be rejected by the grand master workman *and* finance committee of this grand lodge" the claimant must, before taking any other proceeding, demand a hearing, and submit his claim for the consideration of the board of arbitration. *Held*, that, in view of other provisions of the law referred to in the opinion, the copulative "and" between "grand master workman" and "finance committee" should be read as if it were the disjunctive "or," and that a rejection of a claim by either the grand master workman or by the finance committee is effectual, and that the grand master workman has nothing whatever to do in the matter of approving or disapproving a death claim when the finance committee has rejected it; it is only when the finance committee approves a claim that the power to reject is confided to the grand master workman.

*Semble:* The duty of the finance committee to act, upon the claim, was a ministerial one, the performance of which, if refused or unreasonably delayed, could be compelled by *mandamus.*

7. The finance committee of the state lodge of a mutual benefit society reported, in writing, on a claim submitted to it, that the records showed a prior suspension of the member in question, and there was no report from the subordinate lodge as to his standing since then, and therefore there was nothing before the committee on which it could act. The committee then orally rejected the claim, and the written report of the committee, together with the fact that it had rejected the claim, was communicated to the subordinate lodge which had presented the claim to the state organization. *Held*, a rejection of the claim, within a by-law of the society requiring such claim, on its rejection, to be submitted to arbitration.

*Mr. J. W. Kinsley* and *Mr. Massena Bullard*, for Appellants.

*Messrs. Howell & Harney*, for Respondent.

Courts will not allow contracting parties to oust the jurisdiction of the courts as to any controversies that may arise. (*Randall* v. *American Fire Ins. Co.*, 10 Mont. 353; *Kumle* v. *Grand Lodge A. O. U. W.*, 110 Cal. 204, 42 Pac. R. 634; *Daniher* v. *Grand Lodge A. O. U. W.*, 37 Pac. R. 245; *Insurance Co.* v. *Morse*, 20 Wall. 451; *Kinney* v. *Baltimore & Ohio Employees Association*, 15 L. R. A. 142, and cases cited.)

Even those authorities that hold that benefit societies such as the defendant order are in a different category from ordinary mutual life insurance companies, and that provisions in the laws of such societies for the arbitration of claims of members or beneficiaries should first be followed by the person seeking relief before resorting to the courts, nevertheless say that where such provisions seek to make the decisions of

the tribunals of the order final and to preclude the member or beneficiary from subsequently resorting to the courts (as in the present case), they are void as against public policy and may be disregarded. (Niblack on Benefit Societies, Sec. 317, 317a; *Stephenson* v. *Insurance Co.*, 52 Me. 70; *Roxbury Lodge No. 184, I. O. O. F.*, v. *Hocking*, 38 Atl. R. 693; *Reed* v. *Washington Ins. Co.*, 138 Mass. 572.)

When plaintiff's claim was submitted to the finance committee, it found that there was nothing before it on which it could act. Plaintiff was told as plainly as possible that she had no standing before the tribunals. of defendant order. The answer of defendant virtually asserts the same thing, and yet maintains that she should have sought relief from these tribunals instead of resorting to the civil courts. Such an unjust attitude and procedure on the part of defendant order would in any case justify a member in at once resorting to the courts. (Niblack on Ben. Soc., Sec. 314; *Savage* v. *Phoenix Ins. Co.*, 12 Mont. 468.)

Granting for the purposes of this brief, that the laws of the defendant order are binding upon plaintiff, yet it will be seen that defendant never gave her any opportunity for such arbitration. The constitution of defendant provides that arbitration may be demanded by a beneficiary after a claim is rejected by the grand master workman and finance committee of the grand lodge.

It will be seen from the entry in the records of defendant order, that plaintiff's claim was never, in fact, rejected, but the finance committee merely refused to act, and this provision of the constitution purports to be one of forfeiture, and must be strictly construed.

"As in all other cases, forfeiture of insurance provided in mutual benefit associations is not favored by the courts. They, in construing the conditions of membership, when a forfeiture is claimed, will preserve, if possible, the equitable rights of the holder of the certificate of membership. (*Modern Woodmen of America* v. *Jameson*, 48 Kan. 718, 30 Pac. 460; *Elliott* v. *Grand Lodge*, 47 Pac. 1009; Niblack on Ben. Socs., Sec. 315.)

The same section of defendant's constitution provides that the defendant order, by its grand master workman, may demand this arbitration. No demand for arbitration was ever made by defendant; they simply refused to act, and arbitration was thereby waived. (*Spoeri* v. *Massachusetts Mut. Life Ins. Co.*, 39 Fed. 752.)

MR. JUSTICE PIGOTT delivered the opinion of the court.

This was an action brought to recover $2,000, the amount of a beneficiary certificate issued by the defendant to one Daniel P. Cotter, and payable, in the event of his dying while a member in good standing of the defendant, to his daughter, the plaintiff. Trial was had by jury, who found for plaintiff. From an order denying its motion for a new trial, defendant appeals.

Some thirty-seven errors are specified as having been committed by the district court. Of the many questions presented, a detesmination of those relating to one issue will suffice to dispose of the appeal. Questions touching the legal capacity of the defendant to be sued, the admission of Daniel P. Cotter to the Ancient Order of United Workmen, his duty as a member, his alleged suspension and failure to be restored, and the duties and agency of the subordinate lodge to which Cotter belonged, have been raised, but, a decision of them being unnecessary, they are reserved.

The Ancient Order of United Workmen is a voluntary mutual benefit society or association composed entirely of such persons as may become and remain members thereof in compliance with its laws. Its objects, as promulgated by the supreme lodge, are to unite white male persons over 21 and under 45 years of age, regardless of nationality, political preference, or denominational distinctions, who believe in a Supreme Being, into a "fraternal brotherhood" (sic), and to "pledge the members to the payment of a stipulated sum to such beneficiary as a deceased member may have designated while living, under such restrictions and upon such conditions as the laws of the order may prescribe." The supreme lodge

is the governing body of the society, having exclusive juris-
diction of all subjects pertaining to the general welfare of the
order, and clothed with appellate jurisdiction, as a final tri-
bunal of review and appeal, of the decisions of the grand
lodges. The defendant is the Grand Lodge of the Ancient
Order of United Workmen of Montana. It has exclusive
original jurisdiction over all lodges of the society in Mon-
tana, subject to the constitution and laws of the supreme
lodge and the right of appeal. It has power to make rules
for conducting its beneficiary system. Its revenues are
derived from the fees for the organization of new subordinate
lodges, issuing of beneficiary certificates, the sale of lodge
supplies, a per capita tax on the membership, and from an
assessment of $1 on each member who has received the Work-
man degree, imposed whenever the beneficiary fund in the
grand lodge treasury is less than $2,000, or whenever the
beneficiary fund would, by the payment of the beneficiary
certificates whose liquidation is unavoidably delayed, be re-
duced below that sum. The members pay the poll taxes and
assessments to the subordinate lodges to which they belong,
and such lodges forward the money collected to the grand
lodge. Upon receipt of the official notice and proof of death
of a member in good standing entitled to the benefits of the
order, the recorder of the grand lodge shall refer the same to
the finance committee, and, when approved by this committee,
a warrant shall, with the consent of the grand master work-
man, be drawn upon the receiver of the grand lodge in favor
of the beneficiary of such deceased member, and forwarded
to the subordinate lodge to which decedent belonged. The
chief officer of the grand lodge is the grand master workman.
He must sign all orders drawn upon the grand receiver for
such sums as may be voted by the grand lodge, and all war-
rants authorized by the finance committee between sessions of
the grand lodge, if he concur in the approval of the claims
for which warrants are authorized. The only method pro-
vided through which the grand lodge may pay money is by
orders or warrants on its receiver, signed by the grand master

workman, and attested by the grand recorder, under the seal of the grand lodge. The constitution of the defendant grand lodge requires the appointment at each annual session of a board of arbitration to hear and determine all controverted questions which may arise as to the disbursement of its beneficiary fund, and controversies touching its liability for demands against it by those claiming to be beneficiaries of deceased members, and as between those who assert rights as beneficiaries when conflicting claims are set up, "and the decision of a majority of said board shall be final and conclusive, unless reversed by the grand lodge or supreme lodge, it being the purpose and intention of this provision that all these rights shall be determined without recourse to courts of law." The board shall report its action to the grand lodge, which may affirm or reverse the same, and, as a tribunal of review and appeal, make such disposition .of the matter as to it may seem proper, subject to an appeal to the supreme lodge. Whenever any claim under a beneficiary certificate issued by the defendant grand lodge "shall be rejected by the grand master workman and finance committee of this grand lodge, before any other proceeding shall be had thereunder, it shall be necessary for the claimant or claimants to demand a hearing, and offer to submit their claim or claims for the consideration of the board of arbitration of this grand lodge, and if, after such offer of submission and hearing thereof, such claimant or claimants are not satisfied with the conclusions of the board of arbitration, such claimant or claimants must, by appeal, submit their claim or claims to the grand lodge for its consideration, and, if such claimant or claimants are not satisfied with the action of this grand lodge, such claimant or claimants must, by appeal, submit their claim or claims to the supreme lodge Ancient Order United Workmen for its consideration and action, as provided by the general laws of this order; and any claimant or claimants seeking to enforce a claim or claims without such submission and appeal shall be estopped, by virtue hereof, from maintaining any suit or action upon such claim."

In December, 1888, Cotter became a member of Butte Lodge No. 1, which was then within the jurisdiction of the grand lodge of Nevada, but which since January 1, 1891, has been under the jurisdiction of the defendant grand lodge. On August 13, 1894, beneficiary certificate No. 764, which is the subject of this action, was issued, countersigned by the master workman of the local lodge in conformity with the laws of the defendant as of December 27, 1888, — the day when the workman degree was conferred on Cotter. This certificate was issued for the purpose of effecting a change in the beneficiary. Cotter died on September 28, 1895. The plaintiff then gave notice and furnished proof of the death of Cotter to the grand recorder through the local lodge. The recorder thereupon presented the notice and proofs to the finance committee of the defendant, which committee made the following report: "In the matter of the death report of D. P. Cotter, there is presented to the committee at this time death report executed by Butte Lodge No. 1, the undertaker and attending physician, but there has been filed in the grand recorder's office up to this time no beneficiary report from Butte Lodge No. 1, containing any reference to D. P. Cotter's standing in the order since the report filed March 7, 1894, which shows D. P. Cotter to have been suspended on assessment No. 2, levied in January, 1894, and there is nothing before this committee on which it can act." It was further shown that the finance committee orally rejected the claim, and advised the grand recorder of such rejection, and that he reported the oral rejection, as well as the written report of the committee, to Butte Lodge No. 1, through which the claim had reached him.

In support of a defense pleaded, the defendant offered to prove that the plaintiff never demanded a hearing before, or submitted or offered to submit her claim to, the board of arbitration of the defendant, although she knew of the action taken by the finance committee. All evidence tending to support such offer was excluded, the defendant excepting. This exception presents the only question which we deem necessary

to consider; for the brief of plaintiff admits that arbitration was not had, and we understood her counsel to concede upon the argument that she had not demanded a hearing, or offered to submit her claim to the board of arbitration.

1.   Plaintiff contends that the provisions made by the society and by the defendant order establishing a series of tribunals for the hearing and determination of all controverted questions which may arise as to the liability of the grand lodge of Montana upon death claims under beneficiary certificates issued by it, and declaring the decision of each final and conclusive, unless an appeal be taken to the next higher tribunal, the last being the supreme lodge, which is called a final tribunal of review and appeal, are void,—their expressed purpose being that such claims shall be investigated and finally determined within the society or order without recourse to the courts of law.   It is to be observed that the constitution of the defendant, after requiring the claimant to demand a hearing and offer to submit his claim to the tribunals of the order, declares, in effect, that he shall not maintain any suit upon the claim, unless it has first been submitted and appealed.

Much contrariety of opinion is revealed by the adjudications with respect to the question of whether the laws of mutual benefit societies of the character of the Ancient Order of United Workmen which establish tribunals whose decisions are declared to be final and conclusive may be permitted to effect the result sought to be attained,—the prevention of resort to the courts by a member or one claiming to be a beneficiary.   The common-law doctrine that a provision in an ordinary contract requiring all differences between the parties touching their rights and liabilities thereunder to be submitted to arbiters, whose decision or award shall be conclusive and final, will not be allowed to bar the litigation of such differences in the courts of the land, is an anomaly, and inconsistent with the right freely to contract; and, if it were not so firmly and well-nigh universally established, we apprehend that it would be over-turned, as resting upon no solid foundation of reason.   Its operation should not be extended by

construction, nor should it ever be invoked to nullify or impair contractual provisions not clearly infected with the supposed evils intended to be cured or prevented. (See *President, etc. of Delaware & H. Canal Co. v. Pennsylvania Coal Co.*, 50 N. Y. 258.) The doctrine is, however, recognized and approved by the decisions of this court ( *Wortman* v. *Montana Central Railway Co.*, 22 Mont. 266, 56 Pac. 316, and the citations therein), and also by section 2245 of the Civil Code of 1895, which, having been enacted since the constitution and laws of the defendant were promulgated and adopted, and after Cotter became a member of the defendant, has no pertinency to this case. On principle, there seems to be no good reason why the members of a purely mutual and semicharitable benefit society may not agree and contract with each other by laws of their own making that future differences and controversies, arising out of their relation to each other and to the society, shall be finally determined by the tribunals created and selected by themselves. We are inclined to think the better reasoning is with those courts which, while recognizing and following the common-law rule where ordinary contracts are involved, nevertheless hold that the members of, and those claiming benefits from, the society are bound, in the absence of fraud or palpable error, to seek redress of their grievances in the mode prescribed by the society, wherein vests the sole jurisdiction to right their wrongs, and that they are precluded from resort to the courts. (*Robinson v. Templar Lodge*, 117 Cal. 370, 49 Pac. 170; *Canfield* v. *Great Camp, etc.*, 87 Mich. 626, 49 N. W. 875, and cases there referred to; *Fillmore* v. *Great Camp, etc.*, 103 Mich. 437, 61 N. W. 785; *Id.*, 109 Mich. 13, 66 N. W. 675.) But it is not now necessary to decide whether the provision of the defendant's constitution attempting to prevent the maintenance of an action at law upon a beneficiary certificate is enforceable or not. Even though such provision be void, the requirement that the claimant shall seek and exhaust his remedies within the order before he may litigate his rights in the courts is valid, and must be complied with. We feel

no hesitancy in declaring that the provisions are reasonable and valid in so far, at least, as they demand a resort to the several tribunals of the order as a condition precedent to maintaining an action at law to recover a money judgment upon a death claim, and such is our opinion without reference to the clause that "any claimant　＊　＊　＊　seeking to enforce a claim　＊　＊　＊　without such submission and appeal shall be estopped, by virtue hereof, from maintaining any suit or action upon such claim"; for the claimant would still be required, by virtue of the other provisions, to pursue the course and exhaust the remedies prescribed by the order as a prerequisite to the right, if any there be, of resort to the courts. Similar provisions in the laws of like societies have been frequently the subjects of judicial inquiry. The view that they are inoperative has been expressed in but few cases, of which *Daniher* v. *Grand Lodge, A. O. U. W.*, 10 Utah 110, 37 Pac. 245, is a type. An extended and critical examination of the reported adjudications justifies us in making the assertion that the substantial unanimity of opinion, based upon correct principles, upholds such provisions as valid and enforceable so far as they require, as a condition precedent to the bringing of an action, an exhaustion of the prescribed remedies within the order. Out of a multitude of decisions supporting this view, we cite: *Robinson* v. *Templar Lodge, supra; Supreme Council* v. *Forsinger*, 125 Ind. 52, 25 N. E. 129; *Jeane* v. *Grand Lodge*, 86 Me. 434, 30 Atl. 70; *Supreme Lodge* v. *Raymond*, 57 Kan. 647, 47 Pac. 533; *Smith* v. *Ocean Castle*, 59 N. J. Law 198, 33 Atl. 849; *Robinson* v. *Irish-American Ben. Society*, 67 Cal. 135, 7 Pac. 435; *Poultney* v. *Bachman*, 31 Hun, 49; *Harrington* v. *Workingmen's Ben. Association*, 70 Ga. 340; *Wood* v. *What Cheer Lodge* (R. I.) 35 Atl. 1045; *Levy* v. *Order of Iron Hall*, 67 N. H. 593, 38 Atl. 18; *Oliver* v. *Hopkins*, 144 Mass. 175, 10 N. E. 776; *McAlees* v. *Supreme Sitting Order of the Iron Hall* (Pa. Sup.) 13 Atl. 755; *Grant* v. *Langstaff*, 52 Ill. App. 128.

2.　The suggestion that the constitution and laws of the defendant order may not be binding upon the plaintiff as the

beneficiary of a deceased member is without merit. Whatever right she may have arises from, and depends solely upon, the voluntary act of her father in becoming and remaining a member of the defendant order, and she is as much bound as was he. (*Canfield* v. *Great Camp*, *etc. supra.*)

3. The plaintiff insists that her claim was not rejected by the grand master workman and the finance committee of the defendant, and that a rejection by each is, under the laws of the defendant, a prerequisite to the existence of a right in her to demand a hearing before, and submit her claim to, the board of arbitration, and that therefore she was under no obligation to demand a hearing, or submit her claim prior to bringing the present action. The provision referred to has already been stated. It is that, whenever a death claim "shall be rejected by the grand master workman and finance committee of this grand lodge," the claimant must, before taking any other proceeding, demand a hearing, and offer to submit his claim for the consideration of the board of arbitration. The language, literally interpreted, means that an appeal does not lie, unless both the grand master workman and the finance committee reject the claim. No difficulty is experienced in reaching the conclusion that a rejection by either the grand master workman or the finance committee is sufficient to require the claimant to seek relief from the board of arbitration. The copulative "and" between "grand master workman" and "finance committee" should be read as if it were the disjunctive "or." It is to be noted that all warrants and orders for the payment of money by the grand lodge must be signed by the grand master workman. When the grand lodge itself orders a warrant drawn, the grand master has but one duty to perform with respect to it, to wit: the signing of the warrant. He has no discretion in the matter. He is without authority to approve or disapprove. When, however, the finance committee approves claims, and authorizes warrants between sessions of the grand lodge, their action is subject to the approval or disapproval of the grand master workman; for without his consent to the allowance by

the finance committee, disclosed by his signing the warrant, the action of the committee is without effect. If he approves the allowance, he signs the warrant for its payment. If he disapproves, his duty is performed when he omits to sign. His approval, as well as that of the committee, is, in the absence of an appeal, required for the valid allowance of a claim. A disapproval by either is a rejection. The finance committee may approve a claim which the grand master workman disapproves, or the finance committee, acting independently of the grand master workman, may refuse to allow a claim,—in either case the rejection is effectual. The grand master workman has nothing whatever to do in the matter of approving or disapproving when the finance committee has rejected; in such case his attempted rejection adds nothing to the effect already produced by the action of the committee. In short, neither the grand master workman nor the finance commttttee alone can allow a claim, but either may reject, although the other may favor payment. According to the theory of the plaintiff, an appeal does not lie when the finance committee approves, and the grand master workman rejects a claim. Her theory is also that an appeal does not lie, unless the grand master workman performs the vain and useless act of disapproving the claim already rejected by the finance committee. He has no duty whatever to perform where the finance committee rejects a claim. It is only when the committee approves that the power to reject is confided to him.

The duty of the finance committe was to act upon the claim. This duty was ministerial, the performance of which, if refused or unreasonably delayed, could doubtless be compelled by *mandamus*, to the end that the rights and privileges of both the plaintiff and defendant might be preserved and enforced in conformity with the laws of the society. Under such circumstances, in view of the provisions in respect of the obligation to submit to arbitration, *mandamus* would seem to be the only remedy at law available to the plaintiff, unless, indeed, the refusal or delay were tainted with bad faith, of which the record presents no evidence. But discussion or de-

cision of this question is unnecessary, since there was evidence tending to show a rejection. The written report of the committee may possibly not have been a complete rejection. It was, however, at least a qualified rejection, or a failure or refusal to approve at the time the report was made for the reason therein stated, which reason prevented favorable action on the claim. In addition to the written report, the committee orally rejected the claim. Such report and rejection were communicated to Butte Lodge No. 1, by which, on plaintiff's behalf, the notice and proof of death had been sent to the defendant, and the inference is that she was duly advised of the disallowance.

In excluding the offer to show that plaintiff never demanded a hearing or offered to submit her claim to the board of arbitration, the court erred to the prejudice of the defendant.

The order denying a new trial is therefore reversed, and the cause is remanded.

*Reversed and Remanded.*