PALMER STEEL STRUCTURES, A CORPORATION, PLAINTIFF AND APPELLANT, *v.* WESTECH, INC., A CORPORATION, CHARLES V. McCLAREN AND ALFRED W. BOYER, JR., DEFENDANTS AND RESPONDENTS.

No. 14005.
Submitted May 2, 1978.
Decided Sept. 13, 1978.
584 P.2d 152.

Anderson, Symmes, Brown, Gerbase, Cebull & Jones, Billings, Rockwood Brown (argued), Billings, for plaintiff and appellant.

Moulton, Bellingham, Longo & Mather, Billings, Ward Swanser (argued), Billings, for defendant and respondents.

MR. JUSTICE DALY delivered the opinion of the Court.

Plaintiff Palmer Steel Structures (Palmer) appeals from orders of the District Court, Yellowstone County, setting aside and refusing to reinstate a temporary restraining order which enjoined defendant Westech, Inc. (Westech) from proceeding with arbitration. Palmer Steel Structures contracted to construct a metal airplane hanger building for Westech, Inc. Article 15 of the parties' contract provided that:

"All claims or disputes arising out of this Contract or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. * * *"

Palmer commenced construction on June 17, 1976. By Friday, September 17, 1976, approximately 90% of the construction was complete. To safeguard the structure over the weekend, Palmer's employees installed braces and a rope anchor. The next day, September 8, 1976, a strong wind caused the structure to collapse.

Westech's builders' insurance paid for removal of debris,

material replacement and reconstruction of the collapsed structure to its status at the time of the loss. Palmer thereafter substantially completed the structure in accord with the basic contract.

Under the contract as modified by the parties, Palmer claimed a balance owing to it from Westech, Inc. of $48,714.17. Possession of the building was given to Westech on about January 15, 1977. Following possession Westech asserted certain claims and offsets against the balance of its account to Palmer. On February 15, 1977, under the contract arbitration clause, Westech submitted its demand for arbitration before the American Arbitration Association. The enumeration of disputes as specified by Westech in its demand for arbitration was:

"1. Delay in performance of contract

"2. Breach of contract, failure to perform contract on or before October 1, 1976

"3. Failure to perform the work in a good and workmanlike manner free from faults and defects as the same pertains to the sliding doors which are an integral part of the contract."

Westech's "CLAIM OR RELIEF SOUGHT" was:

"1. Damages for costs, expenses and lost profits resulting from failure to perform work on or before October 1, 1976, in the amount of $150,000.00.

"2. Damages because of failure to adequately and properly correct doors on the hanger facility in the amount of $50,000.00

"3. The right to withhold the amount due under the contract to offset damages.

"4. For filing fees.

"5. For arbitration fees.

"6. To reserve the right to add other items after the initial conference."

Palmer promptly gave notice that it did not consent to and refused submission of the matter to arbitration. On April 4, 1977, the American Arbitration Association gave notice to Palmer that unless stayed by court order before April 11, 1977, the matter

would be deemed submitted. On April 6, 1977, Palmer filed an action in District Court seeking to recover the $48,714.17 balance owing under the construction contract and also asking for an injunction against submittal of Westech's counterclaim to arbitration.

The District Court, Cascade County, issued an order to show cause and a temporary restraining order. The case was then transferred to the District Court, Yellowstone County. The District Court in Yellowstone County on June 2, 1977, ordered that the temporary restraining order against Westech' arbitration proceedings be set aside. Since the filing of the instant counterclaim against Palmer asserting the same claims, alleged delay in performing the contract, alleged defective and faulty construction based upon the alternate theories of breach of contract, negligence, strict liability and breaches of the warranties of fitness and merchantability.

Palmer presents two issues for review:

1. Is the arbitration provision in the parties' contract unenforceable?

2. Is Palmer entitled to injunctive relief?

Section 13-806, R.C.M.1947, provides:

"Every stipulation or condition in an contract by which any party thereto is restricted from enforcing his rights under the contract, by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void."

This Court has long interpreted section 13-806, R.C.M. 1947, to mean that a contract may require future disputes as to value or quantity to be submitted to arbitration. *Wortman v. Montana Central Ry. Co.* (1899), 22 Mont. 266, 279, 56 P. 316; *School District No. 1 v. Globe & Republic Ins. Co.*, (1965), 146 Mont. 208, 213, 404 P.2d 889, However, contract provisions which require parties to submit future disputes as to questions of law are void under the statute. *Green v. Wolff*, (1962), 140 Mont. 413, 372 P.2d 427; *State ex rel. Cave Construction Co. v. District Court*, (1967), 150 Mont. 18, 430 P.2d 624. Here, the contract provision provided

that "All claims or disputes arising out of this Contract or the breach thereof shall be decided by arbitration * * *."

The "claims or disputes" submitted by Westech may be paraphrased as: Did Palmer breach its contract by failing to complete its work by October 1, 1976? Was Palmer negligent in its workmanship and inspection of the building? Did Palmer breach its warranties of merchantability and fitness in erecting the building? All of these questions are issues of law or mixed issues of law and fact. Westech may not require Palmer to submit such questions to arbitration without its consent.

Montana has code provisions for submission of existing disputes to arbitration (Title 93, Chap. 201, Sections 93-201-1 through 93-201-10), but such submission must be voluntary, requiring consent of all parties. Apparently such consent may be revoked up to the time an arbitration award is entered in the District Court. Section 93-201-3, R.C.M.1947. Here the parties are not proceeding under statutory authority. This is a common law agreement for arbitration, which is unenforceable, (6 C.J.S. Arbitration § 2, pp. 159, 162), when the agreement is to arbitrate all disputes that may thereafter arise. *State ex rel. Cave Construction Co. v. District Court, supra.* Without the consent of Palmer Steel Structures, therefore, the arbitrators have no authority to act (6 C.J.S. Arbitration § 72, pp. 286, 287) and any action taken by them without such consent is a mere nullity. In that circumstance the court may stay further proceedings in arbitration:

"* * * So it may be proper to stay arbitration where there is no valid contract to arbitrate * * * [or] where the contract is unenforceable * * *." 6 C.J.S. Arbitration § 45, p. 247.

Nonetheless Westech contends the District Court did not err in setting aside its injunction order against arbitration. It argues "No harm can be done by allowing Westech to arbitrate its claim. The court must decide which, if any, findings made by the arbitrators will be enforced." Westech is arguing that some issues may be decided under arbitration and submitted to the District Court, even under the otherwise unenforceable arbitration clause. It further

argues that arbitration is not a judicial proceeding and will not cause irreparable injury to Palmer.

It is clear that if arbitration is permitted as to any issues, Palmer will have to elect whether to participte in the arbitration process, on pain of having issues decided by the arbitrators without opposition, since the arbitrators' decisions will later be presented to the District Court for adoption. It seems that the proposal to continue in arbitration goes to the very heart of what section 13-806, R.C.M. 1947, declares to be invidious, for Palmer would be "restricted from enforcing his rights under the contract, by the usual proceedings in the ordinary tribunals". As we have noted, anything done by the arbitrators now is a nullity, unenforceable, and the proposal to continue in arbitration is in effect a request for a useless procedure.

■ While arbitration, in itself, is not a judicial proceeding, it cannot produce an enforceable result without further judicial action. 6 C.J.S. Arbitration § 3, p. 164. In this case, the rules of the arbitration body provide that the parties are presumed to have consented that judgment upon the award rendered by the arbitrators may be entered in any federal or state court of jurisdiction.

Therefore, if further proceeding in arbitration are allowed, or not enjoined, Palmer faces a real threat of irreparable injury. Allowing the arbitrators to make decisions might have the effect of rendering the District Court's judgment ineffective (section 93-420(3), R.C.M.1947), with additional costs to the parties and a multiplicity of proceedings, judicial or otherwise.

■ Since the arbitrators are not before the District Court to make a stay of arbitration proceedings effective, it is proper that the District Court reinstate its order enjoining and restraining Westech from taking or attempting to take any further steps purporting to arbitrate or determine the issues between the parties outside of the District Court.

The cause is remanded with the instruction that the District Court grant an injunctive order against Westech in accord with this Opinion.

MR. JUSTICES SHEA, HARRISON and SHEEHY concur.

H. WILLIAM CODER, District Judge, sitting for Mr. Chief Justice Haswell, dissenting.

I must respectfully dissent from the opinion of my colleagues.

Initially, from a factual standpoint, there is nothing remarkable regarding the circumstances out of which this case arises and our principal consideration, therefore, is the existing state of the case law in Montana, and whether those expressions serve to implement the intent and philosophy of Montana's Statutory Arbitration provisions and thus give vitality to the concept that parties may contractually agree to submit their disputes to arbitrators for resolution and thus avoid the expensive and time-consuming route of litigation through the Courts.

The majority, in its opinion denying Westech its right to enforce its arbitration clause expressly set forth in its contract with Palmer, relies principally and primarily on § 13-806 (R.C.M. 1947) and the *Wortman* case and its progeny, with little more than a passing reference to the arbitration procedures expressly provided by § § 93-201-1 et seq., (R.C.M. 1947).

In this case the parties negotiated a contract and each gave consideration for the others promise to submit all disputes to arbitration. This does not violate the provisions of § 13-806 as a part of the Montana provisions for arbitration (Title 93, Chapter 201) requires all cases to go to the District Court before an order is binding on the parties.

The Majority state that the decision of the arbitrators "will later be presented to the District Court for adoption", however, the proceedings in the District Court are required to be more than a mere rubber stamp of the arbitrators decision. § 93-201-7(3) provides that the District Court may vacate an award if the arbitrators exceed their power. This should include any award which is made upon an erroneous determination of a question of law.

It has been recognized by this Court in an opinion by Justice William T. Pigott that the provisions of § 13-806 are not sensible.

The common-law doctrine that a provision in a ordinary contract requiring all differences between the parties touching their rights and liabilities there under to be submitted to arbiters, whose decision or award shall be conclusive and final, will not be allowed to bar the litigation of such differences in the courts of the land, is an anomaly, and inconsistent with the right to freely contract; and if it were not so firmly and well-nigh universally established, we apprehend that it would be overturned, as resting on no solid foundation of reason. *Cotter v. A. O. U. W.*, 23 Mont. 82, 89, 57 P. 650, 652 (1899).

It should be noted that this common law rule upon which § 13-806 is based, was developed in a time where the Courts were paid by the parties for each case and to allow such arbitration was to cut the judges pay. This is no longer the case, and further, there is not a court in this country which, does not have more work than it adequately can handle.

Most law suits tried in the Courts today, involve such technically complex areas that judges must spend an extraordinary amount of time educating themselves in the innumerable technical areas that present themselves in Court. It seems that these disputes could be much more efficiently handled by arbitration where the arbitrators are already experts in the technical areas involved in the dispute before them. Following the decision by experts in the field the disputes can then be taken to Court to insure that the law involved in the dispute has been correctly applied.

Mr. Justice Holmes made a comment which should have been applied by this Court in *Cotter* in 1899 and which is even more applicable today:

It is revolting to have no better reason for a rule of law than that it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since and the rule simply persists from blind imitation of the past. (*Collected Legal Papers*, Oliver Wendell Holmes, page 187).