No. 82-434

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

ACE PLUMBING & HEATING, INC.,

        Plaintiff,and Respondent,

    -vs-

HELENA FLATS SCHOOL DISTRICT 15,
a political subdivision of Flathead
County, and STEWART & JANES, general
contractors,

        Defendants and Respondent,,

    -vs-

W. C. SIMONS & ASSOCIATES,

        Third-Party Defendant
        and Appellant.

Appeal from:  District Court of the Eleventh Judicial District,
             In and for the County of Flathead,
             The Honorable Robert C. Sykes, Judge presiding.

Counsel of Record:

    For Appellant:

        Warden, Christiansen, Johnson & Berg; Steve Berg,
        Kalispell, Montana

    For Respondent:

        Ted O. Lympus, County Attorney, Kalispell, Montana
        Montana (Lane Bennett, Deputy)
        Thomas Q. Johnson, Helena, Montana
        William Evan Jones, Missoula, Montana
        Richard DeJana, Kalispell, Montana

Submitted on Briefs:  March 3, 1983

Decided:  May 12, 1983

Filed:  MAY 12 1983

*Ethel M. Harrison*

—————————————————————
                  Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from a judgment issued by the District Court of the Eleventh Judicial District, Flathead County, ordering in part that the third-party defendant, Simons and Associates (Simons) to pay the defendant, Helena Flats School District 15 (Helena Flats) $1,806.49 for a debt incurred in the construction of a school building. We affirm the judgment of the District Court in all respects.

Helena Flats received a federal grant for expansion and remodeling of the Helena Flats elementary school. The school district contracted with Simons for architectural, planning and supervisory services. Simons provided all the contract documents and design specifications. Included within the plans and specifications and contracts for the project were requirements for a well and water system.

Defendant Stewart and Janes, was selected as the general contractor. Plaintiff Ace Plumbing & Heating, Inc. (Ace) was selected by Stewart & Janes as mechanical subcontractor. Ace subcontracted the drilling of a water well to O'Keefe drilling.

On August 25, 1978, Helena Flats and Simons entered into a supplemental agreement. This agreement provided that Simons was responsible for "insuring" completion of the project. This obligation included "insuring" that the contractors performed in accordance with the contract documents. This agreement also increased Simons' fee.

In the summer of 1978 problems developed in the water system. Sand was being pumped into the tanks and lines rendering the water unusable for drinking purposes and

damaging and clogging the fixtures. The cause of the problem was disputed by the parties.

Simons claims the well was improperly drilled. He sent repeated requests to the general contractor suggesting the general contractor require the subcontractors to comply with the specifications, and provide an additional screen for the sand.

The school district claimed the problem was Simons' faulty design. On February 13, 1979, the school district decided to ask Ace to correct the plumbing. Thereafter, Ace installed five extra tanks and a cut-off valve at a cost of $1,806.49. The problem was corrected. Ace sent a bill to the school district, the school district refused to pay.

Ace filed this action against the school district and Stewart and Janes seeking payment. The school district filed a third-party complaint against Simons for the amount claimed by Ace. A non-jury trial was had on the third-party complaint. The District Court held against Simons and for the school district. The District Court found that the storage system, as designed, was inadequate to assure proper recycling and by reason of the recycling system, continued turbidity in the well itself caused excessive sand to permeate the entire system. The District Court further found that the school board discussed the problem with the architect and general contractor many times.

The District Court concluded that by reason of the contract, Simons failed to take action that would resolve the problem and that any inadequacy in the specifications was the responsibility of the architect to the school board. The District Court ordered Simons to pay the school board the

amount paid to Ace for installation of the tanks and other parts. Simons appeals.

The issues presented for review are:

1. Whether it is mandatory to invoke a standardized arbitration clause in an architect's service contract.

2. Who is responsible for payment to Ace for the subsequent modification of the water system.

3. Whether the ten percent contingency fund provided in the contract should be used to pay the debt.

The first question is whether Simons can now claim that since the school district did not arbitrate they cannot now seek reimbursement for the payment to Ace. It is well settled in Montana that when there are issues of law or mixed issues of law and fact, arbitration is not mandatory without the consent of the parties involved. In this case, the underlying questions to be resolved by the District Court were: Was the architect negligent in his workmanship and inspection of the building? Does liability attach if the plans and specifications of the architect were properly followed? Who is responsible for payment to Simons? These are questions of law and mixed questions of law and fact.

Section 28-2-708, MCA, provides:

"Restraints upon legal proceedings void. Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals or which limits the time within which he may thus enforce his rights is void."

This Court has held that contract provisions which require parties to submit future disputes as to questions of law or mixed questions of law and fact are void under this section. Palmer Steel Structures v. Westech, Inc. (1978), 178 Mont. 347, 350, 584 P.2d 152, 154. In this case, neither

party consented to arbitrate the dispute. Without the consent of the parties the clause was unenforceable.

Furthermore, the defense of the arbitration provision of the contract was not raised by Simons in his answer and third-party complaint. The right to raise enforcement of the arbitration clause may be waived by failure to assert it in a timely manner. If a party fails to raise the right to arbitrate in his pleadings, he waives his right. 5 Am.Jur. Arbitration and Award § 51, at 556, 557. In this case, Simons did not raise the issue of arbitration until much later in the proceedings.

For these reasons Simons is precluded from claiming that the dispute should have been submitted to arbitration.

The second issue is who is responsible for payment for the construction and modification of the water system.

The District Court found that: "The specifications submitted pertaining to the drilling of the well, the development of the water supply, storage and water system, were inadequate; and were not in sufficient detail compared to specifications on other matters relating to said project."

There was testimony presented at trial to show that the plans and specifications were insufficient, thereby rendering the system inoperative. Tom Smith, an expert in the field of well drilling, testified that the system was installed as provided in the plans and specifications and that this system was inadequate. He further testified that he felt the problem was apparent from the outset of the project. Simons testified that the tanks and pump were installed according to the architect's design.

On review, this Court must determine whether there is sufficient evidence in the record to sustain the findings of

- 5 -

the District Court. Only when the findings of the District Court are clearly erroneous will they be set aside. Rule 52(a), M.R.Civ.P.; McConnell v. Dempster (1982), ____ Mont. ____, 650 P.2d 799, 800, 39 St.Rep. 1740, 1742.

In the present case there was sufficient evidence to support the findings of the District Court that the specifications of the architect with regard to the water supply, storage and water system were inadequate.

The contractor is not responsible for errors or defects in the plans and is not liable, absent negligence on his part, where the owner's plans and specifications prove defective. Sandkay Construction Co. v. State Highway Comm'n. (1965), 145 Mont. 180, 188-189, 399 P.2d 1002, 1007. In that case the State was found responsible for the defects in the plans and specifications as the owner/architect. In the present case the District Court found that:

> "Ordinarily the drilling of a well, development of same and establishment of water supply is not considered by contractors and the construction industry as part of any expansion, remodeling and addition project. However, it was required as such by reason of the EDA monies which included same.

> "By reason of said requirement, the Third-Party Defendant, W. C. Simons & Associates assumed the same responsibilities and duties as the architect for the project as it related to all other specifications, performances, etc. for construction, addition and remodeling."

Simons testified that well systems are not normally included in the architect's contract but that this was one of the requirements necessary to obtain an EDA grant. William Janes, of Stewart and Janes also testified that the water well and water system not usually included in the architect's plans and specifications was included in this contract.

Given the terms of the original contract, the supplemental agreement and the testimony presented there was

sufficient evidence presented to uphold the findings of the District Court that Simons was responsible for the performance of the architectural duties which were found to be deficient.

When Simons directed the general contractor to remedy the problem, the plans were not sufficiently detailed to inform the general contractor of what changes were necessary. As a result, the school district was forced to hire Ace to remedy the problem in accordance with the advice of Tom Smith. Simons argues that he informed Stewart and Janes that they had to comply with state, federal and local laws requiring potable water. He argues that these laws were incorporated into the contract and were therefore binding on Stewart and Janes without further direction from him.

In Sandkay, the State argued that the provisions of the "Standard Specifications" were incorporated by reference into the construction contract. The "Standard Specifications" consisted of a printed book containing 502 pages. This Court agreed with the District Court:

> "That the provisions of the Standard Specifications . . . as part of said contract were intended by both parties and can only be construed to allow the Project Engineer to make those normal and anticipated changes in the plans and drawings required by the exigencies of ordinary and anticipated highway construction and were not intended by the parties and cannot be construed to apply to conditions which are abnormal, unanticipated and substantially different from those shown in the contract plans and drawaings, or to authorize or allow defendant to require different and more difficult excavation without additional compensation." 145 Mont. at 187.

Simons argues that Sandkay does not apply in this case because the condition was not abnormal, unanticipated or substantially different from those in the contract plans and drawings. The remedy in this case was the installation of

several new tanks and other parts at a cost of $1,806.49. Sand in the water system does not appear to be a normal or an anticipated condition. Installation of additional tanks and other parts does not appear to be normal or anticipated. Therefore the assertion that the rule in Sandkay does not apply is without merit.

The third issue concerns the application of the EDA contingency fund. Simons argues that the 10 percent contingency fund, required as a condition to federal funding, should be used to pay for the subsequent installment of the new tanks and other parts. The owner/architect contract provides:

> "When a fixed limit of Construction Cost is established as a condition of this Agreement, it shall be in writing signed by the parties and shall include a bidding contingency of ten percent unless another amount is agreed upon in writing. When such a fixed limit is established, the Architect shall be permitted to determine what materials, equipment, component systems and types of construction are to be included in the Contract Documents, and to make reasonable adjustments in the scope of the Project to bring it within the fixed limit. The architect may also include in the Contract Documents alternate bids to adjust the Construction Cost to the fixed limit."

Since Simon did not make the specific order to install the additional tanks and other parts and was uncooperative in his attempt to remedy the situation he cannot avail himself of the benefits of the contingency fund. The contract specifically provides that the architect may require the money in the fund be used to include contingencies. However, it was the school district that hired Ace to remedy the problem. It did so in accordance with the recommendation of Tom Smith to insure normal operation of the facility.

The judgment of the District Court is affirmed in all respects.

_____
John C. Sheehy
                    Justice

We Concur:

_____
John Conway Harrison

_____
Daniel J. Shea

_____

_____
                    Justices

- 9 -