No. 96-355

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

VICTOR REICHENBACH d.b.a.
GENERAL CONTRACTORS
CONSTRUCTION CO.,

    Plaintiff and Respondent,

vs.

WATCO, INC., a Montana
corporation,

    Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diana G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Gerald J. Neely, Billings, Montana

    For Respondent:

        Court E. Ball, Kenneth W. Strong, Towe, Ball, Enright, Mackey &
Sommerfeld, Billings, Montana

Submitted on Briefs:   December 12, 1996

Decided:   May 29, 1997

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

This is an appeal from the Thirteenth Judicial District Court, Yellowstone County. Following a bench trial, the District Court entered findings of fact and conclusions of law on February 9, 1996, and subsequently entered judgment on February 16, 1996, in favor of Plaintiff Victor Reichenbach, d/b/a General Contractors Construction Company. From this judgment, Defendant Watco, Inc. appeals. We affirm.

The sole issue on appeal is whether the District Court erred, as a matter of law, by ruling that Defendant Watco, Inc. breached its subcontract.

### FACTUAL AND PROCEDURAL BACKGROUND

In February 1993, the City of Billings invited area general contractors to submit bids for the construction of a wading pool, rest rooms and sewer in Pioneer Park. The City of Billings retained architect, Jeffrey C. Baston (Baston), to design the project and to oversee the construction. On February 22, 1993, after reviewing Baston's architectural plans, addendum thereto and the project manual, Defendant/Appellant Watco, Inc. (Watco) submitted to Plaintiff/Respondent Victor Reichenbach, d/b/a General Contractors Construction Company (GCCC) a subcontract bid for $10,487.00 on that portion of the job

2

constituting construction of a wading pool and related plumbing. Thereafter, GCCC submitted a bid on the general contract for the Pioneer Park construction project and gave written notice to Watco accepting its subcontract bid on March 3, 1993.

Subsequently, GCCC mailed to Watco a proposed written contract dated March 17, 1993, and later sent Watco a proposed addendum to the contract on April 5, 1993. The proposed written contract contained terms in addition to those contained in the subcontract bid including payment provisions, a lien waiver provision and a liquidated damages provision for delay. Furthermore, the proposed addendum contained a penalty provision for deviations from construction specifications and plans. The parties never executed the proposed written contract. On March 22, 1993, Watco sent a letter to GCCC stating that the volume of the wading pool may have been under-estimated, and, consequently, the size of the piping may be too small. On April 6, 1993, GCCC sent a letter to Baston requesting that he address Watco's concerns regarding the size of the piping. On April 8, 1993, Baston responded by denying the request for a change order to enlarge the dimensions of the piping. That same day, Watco sent a letter to GCCC stating that Watco refused to work unless Baston approved the change order. On May 24, 1993, Watco sent a letter to GCCC stating that it would not proceed with the construction. Thereafter, GCCC contracted with another subcontractor to construct the wading pool for $20,660.00.

On June 30, 1994, GCCC filed a complaint against Watco alleging that Watco had breached its subcontract to construct the wading pool. Watco answered denying all

allegations. On December 12, 1995, a bench trial was held in the Thirteenth Judicial District Court, Yellowstone County. Thereafter, on February 9, 1996, the District Court entered its findings of fact and conclusions of law. The District Court determined that the parties formed a contract on March 3, 1993, under which Watco was obligated to supply materials and construct a wading pool as described in its subcontract bid. The District Court held that Watco breached its subcontract by refusing to perform any work described in the subcontract. On February 16, 1996, the District Court entered its judgment, awarding GCCC $10,253.00, costs and interest thereon. From this judgment, Watco appeals. We affirm.

## DISCUSSION

**Did the District Court err, as a matter of law, by ruling that Watco breached its subcontract?**

On appeal, Watco does not object to any factual findings made by the District Court, but rather objects only to certain conclusions of law reached by the District Court. Specifically, Watco objects to the following conclusions of law:

4.      By submitting the proposed agreement with different or additional terms and discussing substitutions in the original contract, [GCCC] did not breach the contract, commit anticipatory repudiation, or in any way excuse nonperformance by [Watco].

5.      By refusing to perform any part of the work called for by the subcontract, [Watco] breached its subcontract.

We review a district court's conclusions of law to determine whether the district court correctly interpreted the law. Chamberlin v. Puckett Constr. (1996), 277 Mont. 198, 202-03,

4

921 P.2d 1237, 1240. We recently considered the issue of anticipatory repudiation in Chamberlain and concluded that "a demand for performance of a term not contained in the parties' contract, accompanied by an unequivocal statement that the demanding party will not perform unless the additional term is met, constitutes an anticipatory breach of the contract excusing performance by the other party." Chamberlain, 921 P.2d at 1240. We note, here, that the parties stipulated that a subcontract was formed on March 3, 1993. Consequently, the issue on appeal centers on whether the District Court properly concluded that GCCC's actions did not constitute anticipatory repudiation or in any way excuse Watco's nonperformance of the subcontract, and, therefore, that Watco breached this subcontract when it refused to proceed with construction of the wading pool.

Watco argues that its nonperformance did not constitute breach of its subcontract, but rather was excused due to GCCC's anticipatory repudiation. Specifically, Watco points out that GCCC sent to Watco a proposed written subcontract and addendum containing numerous additional terms not addressed in the original subcontract bid which included penalty, payment and liability provisions. Watco contends that taken as a whole, by proposing these numerous additional contractual terms, GCCC communicated its unequivocal intention not to perform its contractual duty and thereby caused anticipatory repudiation of the subcontract. Watco asserts that this Court should "extend" the rule in Chamberlain concerning anticipatory repudiation to include those situations where one contractual party merely makes a demand for performance of terms not contained in the

original contract, without any accompanying unequivocal statement that the demanding party will not perform unless the demand is met. See Chamberlain, 921 P.2d at 1240.

Alternatively, Watco argues that the additional proposed contract terms materially altered Watco's obligations under the subcontract bid and were neither standard form provisions nor were the provisions implied from industry custom and usage. Therefore, Watco argues that these additional proposed provisions created a general excuse for Watco's nonperformance under the subcontract. Specifically, Watco asserts that these additional provisions caused Watco to fear nonpayment due to delay in construction and caused Watco to "reasonably believe" that a public health violation would occur if its suggested piping size changes for the wading pool were not approved by Baston, a violation for which Watco believed it would be held responsible.

GCCC responds that under the definition of anticipatory repudiation as set forth in Chamberlain, it did not cause anticipatory repudiation of the subcontract. GCCC contends that whether the additional contract terms contained in the proposed written contract and addendum would materially alter Watco's duties is irrelevant. Rather, GCCC argues that it never made an accompanying unequivocal statement that it would not perform if Watco did not agree to the additional contract terms, and, therefore, it did not cause anticipatory repudiation of the subcontract. See Chamberlain, 921 P.2d at 1240. Additionally, GCCC responds that the proposed additional terms did not create a general excuse for Watco's nonperformance of the subcontract. Relying on Crook v. Mortenson-Neal (Alaska 1986),

6

727 P.2d 297, GCCC contends that to propose additional contractual terms after accepting a subcontract bid is a common industry practice. See Crook, 727 P.2d at 301 (holding that industry custom and circumstances of a particular construction project dictate that certain proposed contract terms are reasonably expected to be included in the final subcontract).

Furthermore, GCCC argues that Watco's fear of nonpayment as well as its fear of liability did not excuse its nonperformance of the subcontract. First, GCCC asserts that Watco cannot now use its fear of nonpayment due to delay in completion of the construction project as justification for its nonperformance under the subcontract when Watco itself was a major cause for the delay. Second, GCCC argues that Watco's fear of liability is unpersuasive because Watco could not lawfully have been subjected to any additional liability as a result of agreeing to any of the proposed additional terms. That is, relying on numerous cases including Sandkay Constr. Co. v. State (1965), 145 Mont. 180, 399 P.2d 1002 and Ace Plumbing & Heating, Inc. v. Helena Flats School Dist. (1983), 204 Mont. 81, 662 P.2d 1327, GCCC asserts that a subcontractor is not responsible for errors or defects in an owner's plans and specifications. Consequently, GCCC contends that because Watco's fear of nonpayment and fear of liability did not provide an excuse for its nonperformance of the subcontract, Watco's refusal to perform any part of the work required under the subcontract constituted breached of the subcontract.

As discussed above, whether addressing anticipatory repudiation in particular or excuse of nonperformance in general, both parties concentrate their arguments on whether

7

proper turnover of water. The plumbing as it was drawn in the plans will not meet the State Health Code requirements for turnover.

This job was bid per specifications and not as a design build project. *The architect has refused to issue a change order to correct the problems. We will not be involved and held responsible for a design that doesn't meet code or accomplish the design objectives.*

*We will not return the contract or proceed any further unless these issues can be resolved.*

*Also, unless the architect is willing to cooperate and communicate, we have no further interest in this project.* [Emphasis added.]

Watco again wrote to GCCC on May 24, 1993, stating:

I finally received a call from Jeff Baston on May 10, 1993.

He said that claims had been denied, that the job was either in arbitration or going into arbitration, and that there was possible litigation with Gary's Excavating. (He didn't give the reason.)

We talked about the wading pool, the gallonage, the pipe sizing, and the stainless skimmers not being available. I asked him to provide a waiver and not hold us responsible for lack of turnover with his pipe sizing and calculation of water gallonage. He said that he could not do that. I then asked him to send me a drawing on how he felt that the pool should be plumbed. He said he would send me a letter showing how he calculated the gallonage. The only thing I received was a copy of the letter he send [sic] to Keith Bell at the Dept. of Health. (Copy enclosed).

*I have the stainless for the wading pool in my warehouse but I have decided against signing the contract and going ahead with the project. It seems apparent the work performed would not be paid on time and could possible [sic] drag on for months or years or maybe never be paid.*

*Also, the architect has set up the contract documents to allow him to hold someone else responsible even though his specifications are in error.* [Emphasis added.]

Upon review of the evidence, we conclude that Watco failed to perform under the subcontract formed on March 3, 1993, irrespective of GCCC's proposal for additional contract terms. Consequently, we hold that the District Court correctly concluded that GCCC did not commit anticipatory repudiation or in any way excuse Watco's nonperformance. Accordingly, we hold that the District Court correctly ruled, as a matter of law, that Watco breached its subcontract by refusing to perform any part of the work under the subcontract.

Affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices