No. 95-470

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

RANDALL R. CHAMBERLIN and
RANDALL R. CHAMBERLIN d/b/a
CUSTOM FRAMING,

      Plaintiffs and Appellants,

  v.

PUCKETT CONSTRUCTION,

      Defendant and Respondent

FILED

JUL 01 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Donald E. White, Attorney at Law,
          Bozeman, Montana

      For Respondent:

          John Brown; Cok, Wheat & Brown,
          Bozeman, Montana

Submitted on Briefs: April 25, 1996

Decided: July 1, 1996

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Randall R. Chamberlin, d/b/a Custom Framing (Custom Framing), appeals from the Findings of Fact, Conclusions of Law and Judgment of the Eighteenth Judicial District Court, Gallatin County, concluding that Custom Framing committed an anticipatory breach of the subcontractor agreement between Custom Framing and Puckett Construction and from the court's subsequent order awarding Puckett Construction attorney's fees and costs. We affirm and remand for determination and award of Puckett Construction's attorney's fees and costs on appeal.

We address the following issues:

1. Did the District Court err in concluding that Custom Framing committed an anticipatory breach of the subcontractor agreement?

2. Did the District Court abuse its discretion with regard to the amount of attorney's fees and costs awarded to Puckett Construction?

3. Is Puckett Construction entitled to attorney's fees and costs on appeal?

*Factual Background*

In January of 1994, Puckett Construction executed a contract with LT Hotel Enterprises under which Puckett Construction would be the general contractor for construction of a Ramada Inn in Bozeman, Montana. Thereafter, Puckett Construction received a written bid from Custom Framing to perform the framing work associated with the

2

project.    Phil  Puckett  (Puckett),    the   owner  of   Puckett
Construction,-drafted and signed a subcontractor agreement for the
framing, which is dated March 24, 1994, and forwarded it to Randall
Chamberlin  (Chamberlin),  one of the partners and owners of Custom
Framing.    Chamberlin   and   his   partner,   David   Worthington
(Worthington),  made ten changes to the agreement and Chamberlin
initialed each change.

Chamberlin signed the revised subcontractor agreement and
returned it to Kenneth Cavenah (Cavenah), Puckett Construction's
superintendent and sole on-site representative for the Ramada Inn
project.   In early April, Cavenah took the revised agreement to
South Dakota and reviewed it with Puckett; thereafter, he returned
to Bozeman and, on April 14, 1994, initialed the changes in the
presence of Chamberlin and Worthington.

Inclement weather had delayed the Ramada Inn project several
times and Custom Framing was scheduled to begin work on April 25,
1994. Ten days prior to that start date, Chamberlin called Puckett
Construction's office in South Dakota and informed the receptionist
that Custom Framing would not begin work until Puckett personally
initialed the changes Chamberlin had made to the subcontractor
agreement.   Puckett Construction subsequently sent Custom Framing
a letter advising that "Puckett Construction will not be hiring
Custom Framing on the Ramada Inn job." Puckett Construction hired
a different framing subcontractor on April 18, 1994.

*Procedural History*

3

In June of 1994, Chamberlin, individually and d/b/a Custom Framing, sued Puckett Construction for breach of contract and requested an unspecified amount of damages. Puckett Construction answered and denied the existence of a contract. Both parties conducted discovery.

In April of 1995, Puckett Construction moved for summary judgment on the basis that no contract existed. Custom Framing opposed the motion, arguing that "when the contract was signed and initialed by [Cavenah] that there was indeed a binding agreement." The District Court denied Puckett Construction's motion, concluding that a contract was formed when Cavenah, Puckett Construction's agent, signed and initialed the revised agreement; the court also determined that a factual issue existed as to which party breached that contract. The pretrial order subsequently was amended to include a counterclaim by Puckett Construction alleging that Custom Framing's "refusal to begin work on the project . . . constituted a material and total breach of the contract . . . [and] [Puckett Construction] was entitled to . . terminate the contract."

A bench trial was held in June of 1995. The District Court directed a verdict on behalf of Puckett Construction on Custom Framing's breach of contract claim, awarded Puckett Construction damages in the amount of $11,405 on its counterclaim, and determined that Puckett Construction was entitled to reasonable attorney's fees and costs. Thereafter, the District Court held a hearing on attorney's fees and costs and awarded Puckett

4

Construction $9,600 in attorney's fees and $1,990.65 for costs. Custom Framing appeals.

*Discussion*

1. Did the District Court err in concluding that Custom Framing committed an anticipatory breach of the subcontractor agreement?

An anticipatory breach of a contract is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived. STC, Inc. v. City of Billings (1975), 168 Mont. 364, 370, 543 P.2d 374, 377 (citations omitted). A repudiation must be entire, absolute and unequivocal to support an action for anticipatory breach. STC, *543* P.2d at 379. An expression of intent not to perform, standing alone, is not enough. STC, *543* P.2d at 379. An anticipatory breach by one party excuses further performance by the other. *See STC,* *543* P.2d at 378.

The District Court concluded that Chamberlin's statement during the telephone call to Puckett Construction on April 15, 1994, that Custom Framing would not begin work until Puckett personally initialed the changes Chamberlin made to the subcontractor agreement, constituted an anticipatory breach of the agreement. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Loney v. Milodragovich, Dale & Dye, P.C. (1995), 273 Mont. 506, 510, 905 P.2d 158, 161 (citing Boreen v. Christensen (1994), 267 Mont. 405, 408, *884* P.2d 761, 762).

We have not previously addressed whether a party's demand for performance of terms not contained in a contract, accompanied by a

statement that it will not perform if those terms are not met, constitutes an anticipatory breach. Other courts, however, have held that such a demand constitutes an anticipatory repudiation. See, e.g., P & L Contractors, Inc. v. American Norit Co. (5th Cir. 1993)) 5 F.3d 133, 139; United California Bank v. Prudential Ins. CO. (Ariz. Ct. App. 1983), 681 P.2d 390, 430; Twenty-Four Collection, Inc. v. M. Weinbaum Constr. (Fla. Ct. App. 1983), 427 So. 2d 1110, 1111.

As discussed by the Arizona Court of Appeals, a party's offer to perform under a contract in accordance with that party's erroneous interpretation of its contractual rights is not, in itself, an anticipatory repudiation. United California Bank, 681 P.2d at 431. The reason is that, while the party may be asserting an erroneous interpretation of the contract, it is still offering to meet its own contractual obligations and cannot be said to be stating an intent not to perform or a refusal to perform. In order to constitute an anticipatory breach, the party's insistence on terms which are not contained in the contract must be accompanied by a "clear manifestation of intention not to perform" unless the additional term is met. See United California Bank, 681 P.2d at 430-31. Moreover, a repudiation occurs regardless of whether the demand for performance of terms not contained in the contract was made wilfully or by mistake; in either instance, the other party has been deprived of the benefit of its bargain. United California Bank, 681 P.2d at 431.

6

We adopt the rationale of the Arizona Court of Appeals in United California Bank regarding the effect of a party's demand for performance of terms not contained in a contract coupled with a refusal to perform unless those terms are met. A party acts at his peril if, "insisting on what he mistakenly believes to be his rights, he refuses to perform his duty." United California Bank, 681 P.2d at 430 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 250 cmt. d (1981)). On that basis, we conclude that a demand for performance of a term not contained in the parties' contract, accompanied by an unequivocal statement that the demanding party will not perform unless the additional term is met, constitutes an anticipatory breach of the contract excusing performance by the other party.

Here, Custom Framing's breach of contract action against Puckett Construction was premised on Cavenah's authority to sign and initial the revised subcontractor agreement on behalf of Puckett Construction; absent such authority, no contract existed upon which Custom Framing could maintain a breach action. Indeed, Custom Framing prevailed on this issue when it successfully opposed Puckett Construction's motion for summary judgment. Notwithstanding such authority in Cavenah, however, Chamberlin stated that Custom Framing would not perform under the subcontractor agreement unless Puckett initialed the changes Chamberlin had made to that agreement. Nothing in the agreement required that Puckett, rather than an authorized agent, initial such changes. Therefore, nothing in the agreement entitled

Chamberlin to demand such performance by Puckett and to refuse to perform unless its demand was met.

Custom Framing contends that its conduct in this regard does not satisfy the strict criteria for anticipatory breach set forth in STC. We disagree.

STC holds that a mere expression of intent not to perform, standing alone, is insufficient to constitute an anticipatory breach; a repudiation must be clear and unequivocal. STC, 543 P.2d at 379. Here, Chamberlin did more than express a mere intent by Custom Framing not to perform. His statement that Custom Framing would not perform unless Puckett initialed the changes was an unequivocal refusal to perform unless Puckett complied with the demand Custom Framing was not entitled to make under the subcontractor agreement. Pursuant to STC and the rationale adopted from United California Bank, we conclude that Custom Framing's unauthorized demand for performance and refusal to perform absent compliance with that demand constitutes a clear and unequivocal repudiation of its contractual duty to perform and an anticipatory breach of the subcontractor agreement.

Custom Framing argues that it "stood ready to perform at all times since Mr. Cavenah initialed the changes" on April 14, 1994. In this regard, Chamberlin testified that "I made that statement [indicating Custom Framing would not begin work until Puckett initialed the changes] on the 15th, but we took action that following week as if to start it." Chamberlin further testified that he made the statement to "get [Puckett's] attention."

8

Custom Framing's argument that it stood ready to perform and its suggestion that it did not intend to refuse to perform under the agreement--even if taken as true--are irrelevant under the doctrine of anticipatory repudiation. In determining whether an anticipatory breach was committed, courts are concerned with whether the promisor communicated an unequivocal indication of an intent not to perform under the contract and not with the promisor's uncommunicated subjective intent in repudiating its contractual obligations. See, e.g., United California Bank, 681 P.2d at 429; STC, 543 P.2d at 379. A promisee need not jeopardize its own interests by speculating about the promisor's clear refusal to perform or by waiting until the time set for performance to ascertain whether the promisor's unequivocal repudiation was serious.

Here, Custom Framing clearly and unequivocally communicated its intent not to begin work absent performance by Puckett of an act not required by the subcontractor agreement. Custom Framing cannot rely on what it contends was its actual, but hidden, intent in order to avoid liability for its anticipatory breach of the subcontractor agreement.

We hold that the District Court did not err in concluding that Chamberlin's statement during the telephone call to Puckett Construction constituted an anticipatory breach of the subcontractor agreement.

'2. Did the District Court abuse it s discret ion with regard to the amount of attorney's fees and costs awarded to Puckett Construction?

The determination of reasonable attorney's fees is not subject to precise calculation or a formulaic approach. We previously have stated that the following factors should be considered as guidelines in making such a determination: (1) the amount and character of services rendered; (2) the labor, time, and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience required; (6) the attorneys' character and standing in their profession; and (7) the result secured by the services of the attorneys. Swenson v. Janke (Mont. 1995), 908 P.2d 678, 682-83, 52 St.Rep. 1272, 1275; Majers v. Shining Mountains (1988), 230 Mont. 373, 380, 750 P.2d 449, 453. These factors are not exclusive, however, and district courts may consider other factors as well. Morning Star Enters. v. R.H. Grover (1991), 247 Mont. 105, 113, 805 P.2d 553, 558 (citing Talmage v. Gruss (1983), 202 Mont. 410, 413, 658 P.2d 419, 421). Thus, the reasonableness of attorney's fees must be ascertained under the unique facts of each case. Morning Star, 805 P.2d at 558.

The District Court held a hearing to determine the amount of attorney's fees and costs to which Puckett Construction was entitled. John Brown (Brown), Puckett Construction's attorney, submitted an affidavit regarding attorney's fees and costs, together with an itemized list of the time charges and costs, prior to the hearing. He stated therein that the total amount of attorney's fees charged to Puckett Construction in conjunction with

10

this case through July 31, 1995, was $9,600 and the total costs were $1,990.65. Brown testified at the hearing that all of the time and costs reflected in his affidavit and attached list related to his representation of Puckett Construction in this case.

Brown and Stephen Pohl (Pohl), Puckett Construction's expert witness on attorney's fees, were the sole witnesses at the hearing. Pohl testified that the Swenson/Maiers factors for determining the reasonableness of attorney's fees formed part of the basis of his opinion and he discussed each of those factors in the context of this case. He noted Brown's extensive legal research on such issues as contract formation, anticipatory repudiation and breach of contract. Pohl pointed out that, in addition to drafting Puckett Construction's answer and counterclaim, Brown prepared responses to discovery, conducted discovery and wrote numerous briefs. He observed that the approximately $35,000 in damages sought by Custom Framing was a substantial amount of money and that, "not only did [Brown] avoid a judgment on behalf of [Custom Framing], but [Brown] did obtain a verdict in favor of [Puckett Construction] . . . and so obviously the results were excellent. . . ." Pohl also testified that Brown is an excellent attorney who has an excellent reputation in the community.

Custom Framing cross-examined Pohl and Brown, but did not present its own expert on attorney's fees. During cross-examination, Pohl did not change his opinions under the Swenson/Maiers factors or his ultimate opinion, based on those

11

factors and the facts of this case, that the claimed fees and costs were reasonable.

The District Court determined that the claimed fees and costs were reasonable and issued an order awarding Puckett Construction $9,600 in attorney's fees and $1,990.65 for costs. We will not disturb a district court's determination of reasonable attorney's fees absent an abuse of the court's discretion. Maiers, 750 P.2d at 453 (citing Talmage, 658 P.2d at 420).

Custom Framing argues that the District Court's award of attorney's fees and costs constituted an abuse of discretion in five specific respects, all of which were brought to the court's attention during cross-examination of Brown and Pohl. We address each in turn, bearing in mind the abuse of discretion standard and that, in **matters** such as this, witness credibility and the weight accorded testimony are within the province of the district court. See Keebler v. Harding (1991), 247 Mont. 518, 522, 807 P.2d 1354, 1357 (citing Matter of Estate of Murnion (1984), 212 Mont. 107, 113, 686 P.2d 893, 896).

### a. "Unrelated Matters"

Custom Framing contends that the District Court abused its discretion in awarding Puckett Construction attorney's fees for "disputes that arose during the course of construction that are unrelated to [this case]." This contention relates to three specific entries contained in Brown's listing of time charges.

First, Custom Framing challenges .75 hours charged on June 10, 1994, for a "[c]onference w/Ken Cavenah and Phil Puckett re:

12

construction dispute." Brown testified that all of the entries were attributable to Puckett Construction's dispute with Custom Framing. Pohl testified that he had no reason to believe that the .75 hour conference was unrelated to this case. Custom Framing did not inquire of Brown about this conference on cross-examination and did not present any evidence in support of its contention that the conference was unrelated to this case.

Second, Custom Framing challenges .50 hours charged on April 13, 1995, for drafting and revising a letter to Puckett regarding "status and delinquent accounts." Custom Framing contends that the purpose of this letter was to collect money owed to Brown by Puckett and, therefore, the time Brown spent on the letter cannot properly be included in the court's award of attorney's fees. However, Custom Framing did not ask Brown about this letter on cross-examination and Pohl testified that this was a proper charge because "it does say status also, and Mr. Brown apparently wrote [Puckett] a letter to let him know where he was in the case."

Third, Custom Framing challenges .50 hours charged on May 3, 1995, for telephone conferences with Rick Nellen (Nellen) and Calvin Braaksma (Braaksma). Brown testified that both telephone conferences related to this case. Regarding the Nellen conference, Brown explained that Nellen represented Cavenah in a dispute which had arisen between Cavenah and Puckett and which resulted in concerns about whether Cavenah would testify on Puckett Construction's behalf ¨ in this case; according to Brown, his discussion with Nellen on May 3 resolved the matter. Brown also

13

explained that Braaksma represented a party with a pending foreclosure action against the Ramada Inn and that he and Braaksma discussed how Braaksma's client's interests could or would be affected by the litigation between Puckett Construction and Custom Framing. Again, Custom Framing presented no evidence indicating that the time charged for these two telephone conferences was unrelated to this case.

*b. Summary Judgment Motion*

Custom Framing argues that the District Court abused its discretion by awarding fees for 20.25 hours Brown spent on the preparation of, and hearing on, Puckett Construction's summary judgment motion. It points out that the District Court denied the summary judgment motion from the bench without hearing argument from Custom Framing and apparently relies on Smith v. Johnson (1990), 245 Mont. 137, 798 P.2d 106, for the proposition that attorney's fees should be denied for time spent on the unsuccessful motion. Custom Framing's reliance on <u>Smith</u> is misplaced.

<u>Smith</u> involved a scenario opposite from that presented in the instant case. There, the district court denied attorney's fees for time spent on a successful summary judgment motion and we affirmed on the basis that the "fixing of attorney's fees is largely within the discretion of the district court and will not be disturbed absent a clear abuse of discretion." <u>Smith</u>, 798 P.2d at 111. Nothing in <u>Smith</u> mandates a conclusion that district courts must deny attorney's fees associated with unsuccessful motions as a matter of law or that this Court will determine that a grant of

14

such fees is an abuse of discretion. The discretion involved in determining reasonable attorney's fees militates against "black letter rules" such as that Custom Framing seems to advocate here and for which it cites no controlling or persuasive authority.

Custom Framing also contends that the motion for summary judgment was "without merit and being so, [was] summarily denied by the Court." While Custom Framing's legal argument in this regard is not particularly clear, we observe that the District Court did not state or otherwise indicate that Puckett Construction's motion for summary judgment was totally without merit or in any way frivolous, as Custom Framing seems to suggest. Moreover, even after Custom Framing brought this theory to the District Court's attention during the hearing in cross-examining Pohl, the court included all of the fees associated with the summary judgment motion in its fee award. The District Court apparently rejected Custom Framing's theory of the court's own evaluation of the summary judgment motion and we cannot do otherwise in order to conclude that the court abused its discretion in awarding the associated fees.

### c. Pretrial Order

Custom Framing challenges one hour Brown spent in amending the pretrial order to add a counterclaim for damages which was not in Puckett Construction's answer or the original pretrial order, contending that it should, not be charged for that "omission." Again, the record contains no evidence in support of Custom Framing's contention that this time was unreasonable, Moreover,

inclusion of the counterclaim earlier in the proceedings presumably would have resulted in the same charge for the work performed, merely recorded at an earlier date.

### d. Trial Preparation

Custom Framing challenges the award of attorney's fees for 29 hours of trial preparation, arguing that such extended preparation is unreasonable for a four-hour trial with no contested facts. Pohl testified, however, that 29 hours was reasonable and the record contains no evidence to the contrary.

### e. Computer Research

Finally, Custom Framing challenges the entirety of the $1,306 in costs for Westlaw research which Puckett Construction claimed and the District Court awarded. Brown explained that his firm assigns a code number for each case for the purpose of Westlaw research and that the Custom Framing/Puckett Construction case was assigned such a number. When Westlaw bills Brown's firm, it sends a "master sheet per code number, [indicating the] amount charged per code number." Brown testified that "the time related in my affidavit is based upon [the] Puckett Construction/Chamberlin code number." Pohl opined that the amount of computer research time was reasonable in this case in which Brown wrote numerous briefs and that "the time [Brown] spent using Westlaw was money well spent, probably would have taken a lot more hours of research . . . if he had come down here to the law library."

Custom Framing presented no evidence indicating that the Westlaw costs were unreasonable or not properly attributable to

16

this case. Its argument, for which no authority is cited, is that there was a'total failure of proof regarding the reasonableness and propriety of the Westlaw research costs. While Brown might have presented a stronger case in support of this claimed amount, we cannot conclude on the record before us that his evidence constituted insufficient proof as a matter of law upon which to premise an award of $1,306 for Westlaw research costs.

We hold that the District Court did not abuse its discretion in the amount of attorney's fees and costs it awarded to Puckett Construction.

3. Is Puckett Construction entitled to attorney's fees and costs on appeal?

Puckett Construction requests that it be awarded its costs and attorney's fees on appeal. Costs on appeal in civil actions are automatically awarded to the prevailing party under Rule 33, M.R.App.P. Additionally, we previously have held that where an award of attorney's fees is based on a contract, the prevailing party is also entitled to an award of reasonable attorney's fees incurred on appeal. Smith, 798 P.2d at 111 (citing Lauderdale v. Grauman (1986), 223 Mont. 357, 359, 725 P.2d 1199, 1200).

Here, the subcontractor agreement between Puckett Construction and Custom Framing provides for attorney's fees and costs incurred in an action "arising out of, in connection with, or incident to [Custom Framing's] performance of this SUBCONTRACT." The District Court's determination that Puckett Construction was entitled to attorney's fees was based on that provision of the subcontractor agreement. Accordingly, we hold that Puckett Construction is

17

entitled to its costs and reasonable attorney's fees incurred in this appeal.

We affirm the decision of the District Court and remand for determination and award of Puckett Construction's costs and attorney's fees on appeal.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

18