No. 01-034

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 206

STUART ESCHENBACHER, d/b/a

CASCADE LOG HOMES,

Plaintiff/Counter-Defendant

and Appellant,

v.

JAMES C. ANDERSON,

Defendant/Counterclaimant

and Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patrick F. Flaherty, Attorney at Law, Great Falls, Montana

For Respondent:

Douglas DiRe, Dayton Law Firm, Anaconda, Montana

Submitted on Briefs: July 12, 2001
Decided: October 11, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Stuart Eschenbacher appeals from the Findings of Fact, Conclusions of Law and Order of the Montana Eighth Judicial District Court, Cascade County, concluding that Eschenbacher breached a purchase contract between Eschenbacher (d/b/a Cascade Log Homes) and James C. Anderson and that the proper remedy is to rescind the contract. We affirm and remand for determination and award of Anderson's attorney's fees and costs on appeal.

¶2 We find the following issues are dispositive of this appeal:

¶3 Whether the District Court erred in failing to interpret the contract as requiring Anderson to provide the name of his boom truck operator?

¶4 Whether the District Court erred in failing to rule that Anderson must pay for completion of the log shell before Anderson can claim a breach of contract?

¶5 Whether the District Court erred in rescinding the contract?

BACKGROUND

¶6 This dispute traces back to early March 1999, when James C. Anderson contacted Stuart Eschenbacher about the construction of a log home. Eschenbacher, along with his wife Barbara Eschenbacher, operates Cascade Log Homes. Cascade Log Homes is in the business of designing and constructing log homes. Eschenbacher has built more than 20 log homes, which he typically constructs in his yard in Cascade, Montana. Almost all of these structures are then reassembled at their final building site, away from his yard in

Cascade.

¶7 On March 19, 1999, Eschenbacher and Anderson entered into a written purchase contract for the construction of a log home. Eschenbacher drafted the agreement, and the two parties reviewed it together at some length in Eschenbacher's home prior to signing. The parties agreed to a total purchase price of $28,000, which Anderson was to pay in four installments. Under the terms of the contract, Eschenbacher was to construct the log home in his yard and then deliver the structure to Anderson's building site on Georgetown Lake, Montana. The contract required Anderson to have the building site ready for the log home at the time of delivery and "make arrangements for all persons necessary to erect the log structure at the site." Eschenbacher was to provide assistance and supervision during the assembly of the log structure.

¶8 Of particular importance were the following terms of the purchase contract concerning the transport and assembly of the log home:

> ¶9 BUYER will act as his own contractor and is responsible for obtaining all building permits, and ensuring compliance with all building codes and restrictions imposed by law or covenant. BUYER acknowledges that CASCADE LOG HOMES is acting soley [sic] as a manufacturer and that any advise [sic] provided by CASCADE LOG HOMES or its agents, during the erection of the prefabricated log structure at the property of the BUYER, is merely an assistance as the manufacturer and will not be construed as though CASCADE LOG HOMES were a contractor. CASCADE LOG HOMES agrees and will provide supervision, consultation, and assistance to BUYER during the erection of the log structure which is part of the contract price.

> ¶10 3. BUYER'S OBLIGATION UPON DELIVERY: BUYER will have the foundation ready for the log structure at the time the logs are delivered to the site, and also agree to provide insulation required for the assembly of the log structure at this time. BUYER will make arrangements for all persons necessary to erect the log structure at the site. BUYER will coordinate and assure availability of a boom truck to assemble the log structure at the building site, and will provide all other equipment necessary for the erection of the log structure at the BUYER'S expense. BUYER will be responsible for the layover charge, if any, for the transportation truck if the allotted time is exceeded.

¶11 Pursuant to the terms of the contract, Anderson made an initial down-payment on March 19, 1999, of $16,500 to Eschenbacher for the purchase of logs and made a second payment of $3,800 on June 7, 1999, as Eschenbacher began construction of the log home.

¶12 Eschenbacher testified that, in the past, he had constructed homes in his yard with a backhoe, tractor or bucket truck. This equipment, however, was not sufficient for constructing Anderson's home. Anderson's log home consists of three interior walls, a layout that Eschenbacher had never constructed before. In order to assemble such a home, and any future homes with a similar design, Eschenbacher purchased a boom truck for $17,000. This boom truck has a lift capability of six tons and a reach capability of sixty feet.

¶13 While Eschenbacher set about constructing the log home, Anderson built a foundation at Georgetown Lake at a cost of approximately $20,000 and purchased $11,093.59 worth of building supplies, including insulation, windows and doors. Apparently, these supplies still sit unused at the site on Georgetown Lake. Anderson also made arrangements with his four sons to assist him with assembling the log home. At no time during the construction did Eschenbacher ever inspect the site on Georgetown Lake.

¶14 In early June 1999, Anderson made arrangements with a boom truck operator, Woodrow Driver, to assemble his log home. Anderson told Driver the dimensions of his home, and Driver responded that his boom truck was capable of doing the job. Driver's truck had a lift capability of around 8,000 pounds without the boom extended and around 1,500 pounds with the lift extended. The reach capability of the boom truck was around 50 feet.

¶15 Sometime around June 25, 1999, a dispute arose over the adequacy of Driver's boom truck. Anderson claims that, prior to completion of the log home, Eschenbacher informed Anderson that he was going to use his newly acquired boom truck to assemble the log home at Georgetown Lake. The cost of such services would be $750. Anderson refused to use Eschenbacher's truck, as he had already made arrangements with Driver.

¶16 Eschenbacher then asked Anderson for the name and contact information for Anderson's boom truck operator. Anderson refused to provide this information and said that the boom truck was his responsibility. Eschenbacher responded by refusing to deliver the log home to Georgetown Lake. He then told Anderson that he wanted the lawyers to work out this disagreement.

¶17 Anderson claims that Eschenbacher was attempting to pressure him into using Eschenbacher's new boom truck. Anderson maintains that he had no duty to provide Eschenbacher with information regarding Driver and that Driver assured Anderson that his boom truck would be adequate. Furthermore, Anderson claims that if Driver's boom truck proved to be inadequate once the log home arrived, he was willing to acquire a different one. Anderson also insists that he would have provided a specific type of boom truck from the beginning if the contract had required it. Eschenbacher denies that he was pressuring Anderson into using his boom truck and contends that his request for the name and contact information of the boom truck operator was simply for safety reasons. He testified that it is his general practice to ask for such information.

¶18 Eschenbacher filed suit against Anderson on October 20, 1999, for breach of contract. On February 11, 2000, Anderson filed an Answer and Counterclaim. The Counterclaim alleged five claims, including breach of contract. On July 28, 2000, the parties stipulated that only the breach of contract claim should be tried before the District Court.

¶19 The District Court held a bench trial on August 21, 2000, and issued its Findings of Facts, Conclusions of Law and Order on December 29, 2000, in favor of Anderson. In its findings, the District Court concluded that Eschenbacher materially breached the contract by refusing to deliver Anderson's log home. In making its decision, the District Court found that if Eschenbacher discovered the boom truck to be inadequate upon delivery, he could have refused to unload the logs from his truck and charge Anderson for any subsequent delay as Anderson acquired a more adequate boom truck. The contract anticipated such a delay, according to the District Court, as it specifically provided that Anderson must pay for any excess layover time Eschenbacher's transportation truck incurred. The District Court further concluded that Eschenbacher could have avoided this dispute by enumerating specific requirements for the boom truck in the agreement.

¶20 The District Court held that Anderson was relieved of any further obligations under the contract. The District Court also held that Anderson was entitled to rescission of the contract and to attorney's fees and costs. Eschenbacher appeals the findings of the District Court.

## STANDARD OF REVIEW

¶21 The construction and interpretation of a written agreement are questions of law. *See, e. g., In re Estate of Hill* (1997), 281 Mont. 142, 145, 931 P.2d 1320, 1323 (citations

omitted). It is also a question of law whether ambiguity exists in a written agreement. *See Estate of Hill*, 281 Mont. at 146, 931 P.2d at 1323 (citations omitted). We review a district court's conclusions of law to determine whether the court's interpretation is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citations omitted).

¶22 The determination of whether a party materially breached a contract is a question of fact. *See Sjoberg v. Kravik* (1988), 233 Mont. 33, 38, 759 P.2d 966, 969. We review a district court's findings of fact to determine whether they are clearly erroneous. *See Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906 (citing *Columbia Grain Int'l v. Cereck* (1993), 258 Mont. 414, 417, 852 P.2d 676, 678). A finding is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence, or, if after reviewing the record, this Court is left with a firm conviction that a mistake has been made. *See Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

## ISSUE ONE

¶23 Whether the District Court erred in failing to interpret the contract as requiring Anderson to provide the name of his boom truck operator?

¶24 A court must interpret a contract in such a way that makes it lawful and reasonable, so long as it can be done without violating the intent of the parties. *See* § 28-3-201, MCA. Courts have no authority to insert or delete provisions of a contract where the contract's provisions are unambiguous. *See Topco, Inc. v. State* (1996), 275 Mont. 352, 358, 912 P.2d 805, 809 (citations omitted). Where the meaning of a contract is ambiguous, this Court has repeatedly followed the rule that a court should interpret a contract most strongly against the party who drafted the agreement. *See Ophus v. Fritz,* 2000 MT 251, ¶31, 301 Mont. 447, ¶31, 11 P.3d 1192, ¶31 (citations omitted).

¶25 In the case before us, Eschenbacher drafted the purchase contract. The language specifically states that Anderson "is responsible for obtaining all building permits, and ensuring compliance with all building codes and restrictions imposed by law or covenant." The contract further requires Anderson to "coordinate and assure availability of a boom truck to assemble the log structure at the building site, and . . . [Anderson] will be responsible for the layover charge, if any, for the transportation truck if the allotted time is exceeded." The obligations of Cascade Log Homes, under the contract, are limited to

providing "supervision, consultation, and assistance to BUYER during erection of the log structure." The contract requires Anderson to acknowledge that Cascade Log Homes is acting only as a manufacturer and any advice it gives during construction is merely assistance. Such advice, according to the contract, shall not construe Cascade Log Home's performance as that of a contractor.

¶26 Eschenbacher argues that the District Court erred in not implying a requirement into the contract that Anderson provide information about the boom truck operator. To require him to perform under the contract without such information, according to Eschenbacher, would be unsafe and commercially unreasonable. Eschenbacher insists that he would violate various federal and state safety laws if an inadequate boom truck was used during the construction of the log home. He also argues that the language "BUYER will coordinate and assure availability of a boom truck" requires Anderson to coordinate acquisition of the boom truck with Eschenbacher.

¶27 In affirming the District Court's findings, we do not need to confront Eschenbacher's first contention that using an inadequate boom truck would subject him to various liabilities. The District Court's ruling simply does not require Eschenbacher to take such a risk. As the District Court interprets the contract, Eschenbacher could refuse to unload the log home from the transportation truck until Anderson obtained an adequate boom truck. The District Court supported its conclusion by noting that the contract envisioned such a delay by requiring Anderson to pay for any expenses incurred by Eschenbacher for waiting. Furthermore, the District Court notes that Eschenbacher could have avoided this dispute if he had requested specific requirements about the boom truck in the contract.

¶28 Where the meaning of a contract is ambiguous, a court should interpret a contract most strongly against the party who drafted the agreement. *See Ophus,* ¶31 (citations omitted). Given this standard of review, we find it reasonable to assume that the contract sought to protect Eschenbacher from an inappropriate boom truck not by placing strict requirements on Anderson, but by exposing him to economic risk for any delay caused by acquiring an inappropriate boom truck.

¶29 Eschenbacher has built numerous homes that he later delivered to off-site building locations. He therefore should know what information he would need in order to carry out his obligations under the contract. The contract clearly placed the responsibility for acquiring a boom truck with Anderson. The contract plainly states that Anderson is responsible for any costs incurred by Eschenbacher for delay at the building site. It is

conspicuously blank, however, as to specific requirements of the boom truck. Even if Eschenbacher was responsible for assembly of the log home once at the site, an issue that we need not address, the contract simply does not require him to use the boom truck Anderson acquires. While it could be a costly proposition to deliver the log home and then wait until Anderson secured an adequate boom truck, we believe the contract intended to place this cost with Anderson.

¶30 As for Eschenbacher's second contention, we disagree that the language "BUYER shall coordinate" necessarily requires Anderson to involve Eschenbacher with the acquisition of the boom truck or to provide him with information concerning its driver prior to delivery. The contract placed responsibility for the boom truck with Anderson and limited Eschenbacher's involvement. Again, where the meaning of a contract is ambiguous, a court should interpret a contract most strongly against the party who drafted the agreement. *See Ophus,* ¶31 (citations omitted). We therefore interpret the language to mean only that Anderson will simply coordinate the availability of the boom truck with the boom truck operator.

¶31 Accordingly, we agree with the District Court's conclusion that under the terms of the purchase contract Anderson was under no duty to provide Eschenbacher with the name of the boom truck operator.

## ISSUE TWO

¶32 Whether the District Court erred in failing to rule that Anderson must pay for completion of the log shell before Anderson can claim a breach of contract?

¶33 The District Court held that Eschenbacher materially breached the contract by refusing to deliver the log home and telling Anderson that he wanted lawyers to settle their dispute over the boom truck. The District Court then concluded that, once Eschenbacher had breached the contract, Anderson was under no further obligation to pay for the completion of the log home.

¶34 Eschenbacher argues that his refusal to deliver the log home could not be a breach of contract as his delivery obligation was contingent on Anderson tendering a completion payment of $3,800. Stated another way, Eschenbacher argues that this payment was a condition precedent to his duty to deliver the log home. Eschenbacher further argues that Anderson's failure to make the completion payment estopped Anderson from claiming a

breach of contract claim for Eschenbacher's failure to deliver the log structure.

¶35 A condition precedent is "one which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed." Section 28-1-403, MCA. Before a party may require another party to perform under an obligation, the requesting party must fulfill all conditions precedent required of the requesting party. *See* § 28-1-406, MCA. The law, however, does not require a party to an agreement to perform a useless act. *See* Restatement (Second) of Contracts § 255 cmt. a (1981). If a party to a contract repudiates his contractual duty prior to his obligation to perform, the other party may enforce the obligation without performing or offering to perform any of her obligations. *See* § 28-1-407, MCA. Such a repudiation of a party's obligations is an anticipatory breach of contract. *See Chamberlin v. Puckett Construction* (1996), 277 Mont. 198, 202, 921 P.2d 1237, 1240. To support an action for anticipatory breach, a party's repudiation must be entire, absolute and unequivocal. *See Chamberlin*, 277 Mont. at 202, 1237 P.2d at 1239-40.

¶36 A repudiation is accorded the same effect as a breach by nonperformance. *See* Restatement (Second) of Contracts § 255 cmt. a (1981). Strictly speaking, however, a present breach does not have the same effect as an anticipatory breach. A party generally cannot be liable for a present breach for failure to perform under a contract if that party's obligation to perform is contingent on a condition precedent that has yet to occur. *See Management, Inc. v. Mastersons, Inc.* (1980), 189 Mont. 435, 440-41, 616 P.2d 356, 360. If a party's failure to perform, however, constitutes an anticipatory breach of contract, the other party is relieved of his duty to perform any condition precedent before bringing his claim. *See Chamberlin*, 277 Mont. at 202, 1237 P.2d at 1240.

¶37 There is no dispute that the contract requires a completion payment prior to Eschenbacher delivering the log home to Georgetown Lake. The contract states, in part, that a "payment of $3,800 (three thousand, eight hundred dollars and no cents) will be paid upon completion of the log structure at the Cascade manufacturing site." Anderson, however, asserts that Eschenbacher refused to deliver the log home before its completion, thus relieving him of his duty to deliver the $3,800. In support of his claim, Anderson's attorney introduced Mrs. Eschenbacher's deposition testimony during trial. In that testimony, Mrs. Eschenbacher stated that she and her husband did not deliver the log home on its completion date because Anderson and his sons came out "before it was finished." Mrs. Eschenbacher went on to state, "[a]nd at that time there was the disagreement about the bucket truck being used. And at that time Mr. Anderson and my husband agreed to

have the attorneys settle it." Thus, we conclude there is sufficient evidence on the record to support the District Court's finding that the dispute over the boom truck arose prior to the completion of the log home.

¶38 We have previously stated that "a party acts at his peril if, 'insisting on what he mistakenly believes to be his rights, he refuses to perform his duty.'" *Chamberlin*, 277 Mont. at 203, 921 P.2d at 1240 (quoting *United California Bank v. Prudential Ins. Co.* (Ariz. App.1983), 681 P.2d 390, 430 (quoting Restatement (Second) of Contracts § 250 cmt. d (1981))). A party's demand for performance for a term not contained in the contract, accompanied by an unequivocal statement that the demanding party will not perform unless the other party meets the additional term, constitutes an anticipatory breach of contract and excuses performance by the other party. *See Chamberlin*, 277 Mont. at 203, 921 P.2d at 1240. In a case with facts substantially similar to those before us, we concluded that a party's unauthorized demand for performance and accompanying refusal to perform without the other party's compliance with that demand constitute a clear and unequivocal repudiation of his contractual duty to perform and therefore constitutes an anticipatory breach of contract. *See Chamberlin*, 277 Mont. at 205, 921 P.2d at 1241 (holding that party's failure to perform unless other party complied with its demands constituted clear and unequivocal repudiation of its contractual duty to perform).

¶39 In the case before us, Eschenbacher clearly refused to deliver the log home if Anderson did not provide him the contact information of the boom truck operator. As we discuss above, this refusal occurred prior to Anderson's duty to tender the completion payment. In fact, in his Reply Brief, Eschenbacher states that the "only impediments to delivery were Mr. Anderson giving the name of his boom truck operator" [sic]. A requirement that Anderson provide the name of the boom truck operator was not a term of the contract. We hold, therefore, that Eschenbacher's actions constituted an anticipatory breach of contract.

¶40 We would note that the District Court did not articulate the distinction between a present breach and an anticipatory breach in its decision. The District Court simply stated that Eschenbacher breached the contract and Anderson was thus excused from making any further payments. We will affirm a district court's ruling, however, if the court reaches the correct result, even if it does so for the wrong reason. *See State v. Parker,* 1998 MT 6, ¶20, 287 Mont. 151, ¶20, 953 P.2d 692, ¶20 (citation omitted). Therefore, we hold that Eschenbacher committed an anticipatory breach of contract and Anderson was thus excused from the obligation to pay for the log shell before seeking to rescind the contract.

## ISSUE THREE

¶41 Whether the District Court erred in rescinding the contract?

¶42 A party may seek rescission when, through the fault of the other party, the consideration of his obligation fails in whole or in part. *See* § 28-2-1711, MCA. We have held that a party's consideration fails when that party's failure to perform was material to the contract. *See Norwood v. Service Distributing, Inc.,* 2000 MT 4, ¶33, 297 Mont. 473, ¶33, 994 P.2d 25, ¶33. Furthermore, a party's material failure to perform must actually damage the party claiming the right to rescind. *See Norwood,* ¶26. Finally, a party must bring his claim for rescission promptly upon discovering the facts that entitle him to rescind the contract. *See* § 28-2-1713, MCA, *Norwood,* ¶48.

¶43 The District Court held that Eschenbacher's refusal to deliver the log home and demand that lawyers settle the dispute was a material breach of the contract. Our standard of review requires us to consider the evidence in a light most favorable to the prevailing party. *See Roberts v. Mission Valley Concrete Indus.* (1986), 222 Mont. 268, 271, 721 P.2d 355, 357. Therefore, we affirm the District Court's determination that Eschenbacher's refusal to deliver the log home, which was the very item that the purchase contract contemplated he construct and deliver, was material to the contract.

¶44 The District Court also held that Anderson suffered damages from Eschenbacher's breach. Anderson presented testimony and evidence that he spent more than $11,000 on building supplies, more than $20,000 on construction of the foundation and a total of $20,300 to Eschenbacher under the contract. We conclude that the District Court's findings concerning damages are not clearly erroneous.

¶45 Eschenbacher's principal argument against the award of rescission centers around the timeliness of the claim. In *Liddle v. Petty* (1991), 249 Mont. 442, 448, 816 P.2d 1066, 1069-70, we upheld a decision of a district court that held that the buyer, Petty, could not suspend his performance under a contract for deed because he failed to use reasonable diligence to rescind the contract upon discovering facts upon which he had such a right. Petty stopped making payments because of what he felt was a material breach by the Liddles when they failed to assist him in obtaining a mortgage release from the bank as promised in the contract. Petty did not notify the Liddles of his failure to obtain the release, however, for more than two years after the parties signed the contract. *See Liddle,* 249 Mont. at 448, 816 P.2d at 1069; *see also Norwood*, ¶¶49-51 (remanding back to the

district court for further findings regarding timeliness of claim of rescission under facts similar to *Liddle*).

¶46 While we continue to hold that a party must bring a claim of rescission in a timely manner, we find that the facts before us are distinguishable from *Liddle*. In that case the party continued to make payments years after discovering facts that supported his claim of rescission. While there is some dispute in the case before us as to whether the log home was completed prior to Eschenbacher's refusal to deliver the log home, there is no dispute that Anderson refused payment upon learning of Eschenbacher's refusal. There is testimony from Anderson that indicates he made some futile attempts at resolving their dispute and reviving the contract with Eschenbacher. Unlike in *Liddle*, however, Anderson stopped all performance under the contract upon discovery of Eschenbacher's refusal to perform.

¶47 We have held in the past that formal notice of rescission is not always a requisite to rescinding a contract. *See Bozdech v. Montana Ranches Co.* (1923), 67 Mont. 366, 380, 216 P. 319, 322. Rather, it is only necessary that the party electing to rescind makes a timely communication of that intention, in some manner, and bringing an action promptly is generally held sufficient. *See Bozdech,* 67 Mont. at 380, 216 P. at 322. We conclude there is substantial evidence to indicate that Anderson considered the contract over and, by ceasing further payments under the contract, communicated this to Eschenbacher. Anderson's subsequent attempts at resolving their dispute do not rise to such a level that should disturb this conclusion.

¶48 We also do not find error in the District Court's failure to specifically state that Anderson timely made his claim of rescission. We adhere to the doctrine of implied findings where, as here, the trial court's findings are general in terms. *See Berry v. Romain* (1981), 194 Mont. 400, 407, 632 P.2d 1127, 1132. Any findings not specifically made but necessary to the judgment are deemed to have been implied if supported by the evidence. *See Berry,* 194 Mont. at 407, 632 P.2d at 1132. There is substantial evidence in the record to show that Anderson refused to make further payments under the contract upon his discovery that Eschenbacher refused to deliver the log home.

¶49 Finally, Eschenbacher asserts that specific performance was a more appropriate remedy in this case. Eschenbacher supports this assertion by noting that the log home is completed and was designed specifically for Anderson. This court has long held that a party may pursue any remedy that the law affords, in addition to the remedy the contract

affords, unless the contract declares the remedy to be exclusive. *See White v. Jewett* (1938), 106 Mont. 416, 420, 78 P.2d 85, 87, *Kootenai Corp. v. Dayton* (1979), 184 Mont. 19, 25, 601 P.2d 47, 50, *Jensen v. Sire* (1960), 137 Mont. 391, 395, 352 P.2d 263, 265. The disputed contract before us does not specify a remedy, and, for the reasons we set forth above, rescission is an available remedy. Rescission was the relief requested by Anderson and the District Court was correct in granting it.

¶50 For the foregoing reasons, we conclude that there is substantial evidence on the record to affirm the District Court's award of rescission of the contract.

¶51 Anderson requests that costs and attorney's fees on appeal be awarded. Courts automatically award costs on appeal in civil actions to the prevailing party. *See* Rule 33(a), M.R.App.P. In addition, this Court has held that, where an award of attorney's fees is based on a contract, the prevailing party is entitled to his reasonable attorney's fees on appeal. *See Smith v. Johnson* (1990), 245 Mont. 137, 145, 798 P.2d 106, 111 (citations omitted). Thus, we hold that Anderson is entitled to an award of attorney's fees and costs on appeal.

¶52 We note in passing that Eschenbacher objects to the District Court's award of attorney's fees. In its findings, the District Court held that Anderson's expenditure of $7,500 in attorney's fees was reasonable and awarded this amount. It is well settled that we will not address an issue on appeal that a party did not properly raise in the district court. *See Nason v. Leistiko,* 1998 MT 217, ¶11, 290 Mont. 460, ¶11, 963 P.2d 1279, ¶11 (citations omitted). Eschenbacher did not raise the issue of attorney's fees at any stage of the trial, nor did he raise the issue in any post-trial hearings or post-trial memoranda presented to the District Court. Instead, he raises the issue only now on appeal. Therefore, we decline to address the issue of the reasonableness of the attorney's fees awarded.

¶53 We affirm the decision of the District Court and remand for determination and award of Anderson's costs and attorney's fees on appeal.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON