No. 0 1-297

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 19N

DENNIS AND AMY MARSHALL,

        Plaintiffs and Appellants,

    v.

ANDERSON CONSULTING ENGINEERS
AND WILLIAM H. ANDERSON, an individual
enjineer.,

        Defendants and Respondents.

FILED

JAN 3 1 2002

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

STATE LAW LIBRARY

JAN 3 1 2002

OF MONTANA

APPEAL FROM:    District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
Honorable Frank M. Davis, Judge Presiding

COUNSEL OF RECORD:

        For Appellants:

            Derik Pomeroy, Attorney at Law, Bozeman, Montana

        For Respondents:

            Thomas R. Anacker, Anacker Law Office, Bozeman, Montana

Submitted on Briefs:  October 11, 2001

Decided:  January 3 1, 2002

Filed:

_____
          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be tiled as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Dennis and Amy Marshall (Marshalls) appeal from the Fifth Judicial District Court's judgment in favor of Anderson Consulting Engineers and William H. Anderson (Anderson). We affirm in part and remand for an evidentiary hearing on attorney fees.

¶3    The following issues are presented on appeal:

¶4    (1) Did the District Court err when it *sua sponte* dismissed the Marshalls' complaint and demand for jury trial without motions from either party or a hearing?

¶5    (2) Did the District Court err when it awarded to Anderson damages for diminution of property value?

¶6    (3) Did the District Court err in awarding attorney fees to Anderson?

FACTUAL AND PROCEDURAL BACKGROUND

¶7    The Marshalls purchased a parcel of land outside of Dillon, Montana, and began a real estate development project called Crystal Air Community Planned Unit Development (Development). The Development was to consist of five phases. Phase one, Country Estates, included approximately one dozen lots of five acres each. The other phases involved

2

developing an RV park, condominiums and residential housing. On May 23, 1995, the Marshalls entered into a contract with Anderson, a licensed land surveyor and civil engineer, to perform the necessary engineering services.

¶8 During the course of Anderson's work, a dispute arose regarding his fees and costs. As a result, the parties entered into a written settlement and compromise agreement (Compromise Agreement) on February 28, 1996. In pertinent part, the Compromise Agreement provided that the Marshalls owed Anderson $80,011.55. As partial payment, they agreed to convey lots 58, 59, and 60 of the Country Estates subdivision to Anderson. The parties valued these lots at $75,000 and agreed they were subject to the terms and conditions of the Subdivision Improvements Agreement recorded with the Plat Approval in Beaverhead County. In the same vein, the Marshalls agreed to provide evidence of the marketability of the lots' title in the form of a title insurance policy. The Marshalls consented to pay the remaining balance of $5,011.55, plus interest, upon the sale of lots 55 and 56 of Country Estates.

¶9 The Marshalls admittedly failed to complete the required improvements to the Country Estates lots. As a result, Beaverhead County filed an action against the Marshalls. The Marshalls also refused to pay the remaining $5,011.55 to Anderson. Instead, in November 1996, the Marshalls filed a complaint against Anderson alleging breach of contract. They claimed that Anderson failed to satisfactorily perform engineering services pursuant to the May 23, 1995, contract.

¶10 In turn, Anderson filed a counterclaim alleging that the Marshalls breached the Compromise Agreement and owed damages for failing to pay the $5,011.55 and for failing and refusing to convey marketable title to the three lots by not complying with the Improvements Agreement executed in conjunction with the final plat approval for Country Estates. Among other damages, Anderson sought compensation for the alleged diminution of value of the three unimproved lots. Anderson also requested an award of attorney fees as provided for in the Compromise Agreement.

¶11 Over the next three years, discovery disputes ensued, the parties attempted mediation, Marshalls' counsel twice withdrew from the case, and the Marshalls sought and received two continuances of the trial. Upon granting the Marshalls' second counsel's motion to withdraw on October 27, 1999, the District Court ordered the Marshalls to obtain substitute counsel within 30 days. The Marshalls failed to comply with the order.

¶12 On June 13, 2000, two weeks prior to the trial, the court, *sua sponte*, entered its Findings and Order of Dismissal of the Marshalls' complaint. The court stated that the case had been pending since 1996, was scheduled for trial on June 26, and a jury was being summoned. The court then stated that it appeared the Marshalls were without counsel. Finally, the court noted that it ordered the Marshalls to obtain counsel within 30 days of its October order, and that they failed to do so. The court then ordered the Marshalls' complaint dismissed without prejudice and scheduled Anderson's counterclaim for a bench trial. The court did not cite any rule of civil procedure upon dismissing the Marshalls' complaint.

¶13 The District Court scheduled a bench trial on Anderson's counterclaim for September 29, 2000. Nine days prior to the trial date, the Marshalls' current counsel made an offer of judgment based upon the original Compromise Agreement. Following the trial, the District Court found the Marshalls failed to perform pursuant to the Compromise Agreement and awarded damages to Anderson. The Marshalls appeal.

## DISCUSSION

¶14 (1) Did the District Court err when it *sua sponte* dismissed the Marshalls' complaint and demand for jury trial without motions from either party or a hearing?

¶15 After protracted litigation, the District Court, *sua sponte*, dismissed the Marshalls' complaint without prejudice on June 13, 2000, two weeks prior to trial. The District Court stated:

> It has come to the attention of the Court that this case pending since 1996 is scheduled for trial for Monday, June 26 and a jury is being summoned. It also appears that Plaintiffs are without counsel, two having withdrawn. On October 27, 1999, the Court granted Plaintiffs 30 days to obtain new counsel. They have failed to do so or otherwise communicate with the Court despite notice of the scheduled trial date given on March 31, 2000.

The District Court did not reference any rule of civil procedure in its order.

¶16 On appeal, the Marshalls argue that Rule 41(b), M.R.Civ.P., governed the dismissal. They argue that, under Rule 41(b), the District Court erred in acting on its own without a motion by Anderson. Anderson agrees that Rule 41(b) applies, but he claims that the District Court properly acted under the rule since the Marshalls failed to comply with the court's order.

5

¶17    We note that the District Court did not specify any rule of civil procedure upon dismissing the Marshalls' complaint. Although the parties argue the dismissal was governed by Rule 4 l(b), we conclude that the District Court's order granting the Marshalls 30 days to obtain counsel should be construed as a scheduling order under Rule 16(b), M.R.Civ.P.

¶18    Rule 16(f), M.R.Civ.P., governs dismissal of actions for violation of scheduling orders. In relevant part, Rule 16(f) provides that if a party or party's attorney fails to obey a scheduling order, the judge, upon motion or the judge's own initiative, may make such orders as are just, including those orders provided in Rule 37(b)(2)(B)(C)(D), M.R.Civ.P. The district court may dismiss an action under Rule 37(b)(2)(C), M.R.Civ.P., and its decision to do so is reviewed for abuse of discretion. *McKenzie v. Scheeler* (1997), 285 Mont. 500, 507, 949 P.2d 1168, 1172.

¶19    We conclude that the Marshalls failed to comply with the District Court's scheduling order requiring them to obtain counsel within 30 days. Upon considering the series of litigation delays attributable solely to the Marshalls as well as their violation of the court's order, we hold that the District Court did not err in sun *sponte* dismissing the Marshalls' complaint without prejudice under Rule 16(f), M.R.Civ.P. We note, however, that since the Marshalls' complaint was dismissed without prejudice, they may re-file at any time within the applicable statute of limitations.

¶20    (2) Did the District Court err when it awarded to Anderson damages for diminution of property value?

¶21 The District Court found that the Marshalls' failure to comply with the subdivision improvement requirements subjected Anderson and other lot purchasers as well as the Marshalls to legal action by Beaverhead County. It also found that the Marshalls' failure to improve the lots resulted in a devaluation of the lots. The court found that Anderson was entitled to a judgment of $15,000 for the diminished value of the three lots conveyed in the Compromise Agreement.

¶22 On appeal, the Marshalls argue that the District Court erred in determining that the three lots had a value different from the $75,000 amount the parties agreed upon in the Compromise Agreement. They contend the lots were sold "as is." Furthermore, they emphasize that the court stated in its memorandum that Anderson's damages were "highly inflated and speculative. The evidence was simply unpersuasive and less than credible."

¶23 Anderson, on the other hand, claims that the District Court, after considering the testimony of a certified real estate appraiser and weighing the evidence, properly determined that the value of the three lots was diminished by virtue of the Marshalls' failure to comply with the Compromise Agreement. He argues that substantial evidence supported the District Court's damage award of $15,000 for the diminished value.

¶24 The construction and interpretation of a written agreement are questions of law. *Eschenbacher v. Anderson,* 2001 MT 206, ¶ 21, 306 Mont. 321, ¶ 21, 34 P.3d 87, ¶ 21 (citations omitted). The determination of whether a party materially breached a contract is a question of fact. We review a district court's findings of fact to determine whether they are

clearly erroneous. **A finding is** clearly erroneous if substantial evidence does **not** support **it,** if the district court misapprehended the effect of the evidence, or, if after reviewing the record, the Court is left with a firm conviction that a mistake has been made. *Eschenbacher*, ¶ 22 (citations omitted).

¶25 Here, the Marshalls admitted that they did not improve the conveyed lots as required and that, as a result, they were subjected to litigation with Beaverhead County. We thus conclude that substantial evidence supports the District Court's findings that the Marshalls breached the Compromise Agreement.

¶26 For the Marshalls' breach of the Compromise Agreement, the measure of damages is the amount which will compensate Anderson for all the detriment which was proximately caused by the breach. Section 27-1-311, MCA. The Compromise Agreement valued improved and marketable lots at $75,000. However, in violation of the Compromise Agreement, the lots in question were not improved or fully marketable. Although the court stated that Anderson's claimed damages of $30,000 were "inflated and speculative," it did not err in awarding a reduced amount of damages for diminution of value. Upon review of the record and the trial testimony of the real estate appraiser, we conclude that substantial evidence supported the District Court's finding that Anderson was entitled to $ 15,000 for the diminished value of the unimproved lots.

¶27 (3) Did the District Court err in awarding attorney fees to Anderson?

¶28 We will not disturb a district court's award of attorney fees absent abuse of discretion. *Morning Star Enterprises, Inc. v. R.H. Grover, Inc.* (1991), 247 Mont. 105, 114, 805 P.2d 553, 559.

¶29 Paragraph 12 of the Compromise Agreement provides:

> In any litigation arising out of this agreement the successful litigant or litigants shall be entitled to receive from the unsuccessful litigant, in addition to the costs and disbursements allowed by statute, a reasonable attorney's fee to be fixed and determined by the court.

¶30 Following the trial, Anderson submitted an Affidavit of Costs and Attorneys Fees. He claimed $1120 in costs, including $1000 for the real estate appraiser's report, and $16,218 in attorney fees. The Marshalls filed an objection to Anderson's affidavit in which they contested both the awarding of attorney fees and the amount of the attorney fees requested. Specifically, they objected to the $1000 cost for the appraiser's report and insisted that the District Court's diminution of value award was not based on the Compromise Agreement and, as such, Anderson was not entitled to attorney fees on that issue.

¶31 The District Court did not hold an evidentiary hearing regarding attorney fees. Rather, after reviewing Anderson's affidavit and the Marshalls' objection, the court issued an order awarding fees to Anderson. It reduced the $1000 appraisal fee to $500. Additionally, the court stated that "[Anderson's] affidavit itemizing attorney fees was not countered except for counsel's argument that on the diminution of value phase, attorney fees are not allowable. There is some merit to this position." Without further explanation, the court awarded Anderson $620 for costs and fixed attorney fees in the reduced amount of $13,000.

9

¶32 The Marshalls contend that the District Court erred in awarding Anderson his attorney fees when he proceeded to trial on a theory (diminution of value) other than the enforcement of the Compromise Agreement and by awarding fees and costs without a hearing. Anderson counters that the court properly awarded damages for breach of the Compromise Agreement and a hearing was unnecessary since the Marshalls did not specifically object to Anderson's affidavit or file a counter affidavit.

¶33 While the Compromise Agreement provided for the award of reasonable attorney fees, we have held it improper to award attorney fees solely on the affidavit of counsel without holding an evidentiary hearing. *Stark v. Borner* (1988), 234 Mont. 254, 258, 762 P.2d 857, 860. Anderson cites no authority for the proposition that a hearing is unnecessary in the absence of specific objections to an attorney fee affidavit.

¶34 We have also stated that the following factors should be considered in making an attorney fee determination: (1) the amount and character of the services rendered; (2) the labor, time, and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the affected property; (5) the professional skill and experience required; (6) the attorneys' character and standing in their profession; and (7) the result secured by the services of the attorneys. These factors are not exclusive, however, and the reasonableness of attorney fees must be ascertained under the unique facts of each *case. Chamberlain v. Puckett Construction* (1996), 277 Mont. 198, 205, 921 P.2d 1237, 1241-42. Here, the District Court did not give any indication that it

10

considered these factors and, as a result, we have little basis upon which to review the attorney fee award.

¶35    We set aside the District Court's award of attorney fees and remand the case with instructions to hold an evidentiary hearing on attorney fees in accordance with this opinion.

_____
Justice

We   concur:

_____
Chief Justice

_____

_____

_____
Justices

11